## Commonwealth v. Begley et al.

(Decided Feb. 25, 1938.)

JOHN E. CAMPBELL, HUBERT MEREDITH, Attorney General, and JESSE K. LEWIS, Assistant Attorney General, for appellant.

C. W. NAPIER, C. A. NOBLE, J. B. EVERSOLE and E. C. O'REAR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—
Reversing.

This is the second appeal of this case. See Commonwealth v. Begley, 261 Ky. 812, 88 S. W. (2d) 920, 921. The proceeding was originally instituted to condemn a strip of property for highway purposes on route No. 15 leading from Winchester, Ky., to Whitesburg, Ky., through the City of Hazard. The proof indicates that it was necessary to take approximately half of the lot belonging to appellees, Mr. and Mrs. John X. Begley, and that in so doing it was necessary to cut off the front end of their five-room cottage located on the property. The original report of the commissioners ap-

pointed to value the property condemned, instead of valuing it, suggested that it was possible to purchase a piece of land immediately in the rear of appellees' lot and to move their house back at a cost of $125. Appellees excepted to this report, and on a trial before a jury in the county court they were allowed the sum of $800 for the land and improvements. They were dissatisfied with this finding and appealed to the Perry circuit court, where they were allowed the sum of $1,600. Thereafter, on motion of the Commonwealth, the court granted a new trial, and on the second trial the value of the property taken was fixed at $1,500. A motion for a new trial was overruled, and an appeal prosecuted to this court, as set out above. On that appeal the only grounds urged for reversal were the admission and rejection of evidence and the excessiveness of the verdict. The judgment was reversed on the question of evidence, and the propriety of the verdict was not determined. Thereafter, upon a retrial in the Perry circuit court, the jury fixed the value of the property at $2,500, and it is from the judgment entered thereon that this appeal is prosecuted. It is again urged that the court erred in the admission and rejection of certain testimony and that the verdict is excessive and the result of passion and prejudice. It is also insisted that the verdict is not sustained by sufficient evidence.

The first ground urged is directed to the action of the court in refusing to permit the mayor of Hazard, who testified as an expert on real estate values, to give the price paid for another piece of property in the same neighborhood approximately a year before the date of the taking of the property here involved. It is well settled that evidence of the sales of land of like character, similarly situated and at a point of time not too remote, is admissible for the dual purpose of showing the value of the property taken and also to show the facts upon which the witness bases his opinion regarding the value of the property in controversy. It would seem that the testimony here excluded would come within this rule and that the court should not have excluded it. However, at a later point in the trial another witness was permitted to testify fully concerning exactly the same sale, so that the only result of the court's action was possibly to weaken the opinion of values given by the mayor through its refusal to permit him to show the facts on which his opinion was based.

A more serious question is presented by the objection to the testimony of certain of the witnesses for appellees who were permitted to express an opinion as to the value of the property taken and by the contention that such evidence does not sustain the verdict. Mrs. Begley was permitted to testify that the value of the house and lot was $3,500 at the time of the taking. She based her opinion of value on the fact that other people had tried to sell property to her and that she placed a valuation on this property "just like other people would place it on theirs." Mr. A. L. Ware was permitted to express an opinion based on his "own experience and horse sense" that the property was worth $3,400. He testified that he was engaged in general engineering, architectural, and appraisal work. He did not indicate what kind of appraisals he had made or whether any one had ever accepted one of them as a basis for action. He did not recall any voluntary sales in the vicinity within the last five years. Mr. J. D. Davis testified that he was acquainted with the house and that he was acquainted with real estate values in the vicinity in August, 1934. He had dealt in real estate in Hazard for twenty-five years. He was permitted, over objection, to give as his opinion that the property was worth $2,300. On cross-examination he stated that he based his estimate of value on "what people asked for their property." Mr. L. P. Grigsby testified that he was acquainted with the value of property in the vicinity "to some extent." He was permitted, over objection, to say that the property was worth $3,000 at a fair voluntary sale. On cross-examination he stated that he did not know of any sales in that vicinity for two or three years prior to August, 1934. Mr. Zack Duff testified that he was circuit court clerk. He was asked, "Have you ever bought or sold any property in this town?" and responded, "Yes, some." He testified that he was acquainted with values of real estate in the vicinity and, over objection, gave his opinion that the property in question was worth $2,000. On cross-examination he stated that he based his estimate of value on what people asked for their property. He testified that he had tried to buy an adjoining lot, but he was never interrogated regarding the price bid or asked.

The highest value of the property fixed by any witness for the Commonwealth was $750. Most of the wit-

nesses asked fixed the value of the remaining portion of the house and lot at $100, although some of them set it as low as $50.

Appellees pulled the laboring oar to establish that the verdict of $800 found in the county court was improper. See discussion in Commissioners of Sewerage of Louisville v. Reisert, 243 Ky. 494, 49 S. W. (2d) 324. The real question for decision in this case, therefore, is whether or not the evidence is sufficient to overcome the valuation thus established.

Appellees are entitled to "just compensation" for the taking and damaging of their property—nothing more, nothing less. They are neither legally nor morally justified in making a profit at the expense of other taxpayers, nor are they required to sacrifice their property for the public weal.

It has long been a rule of thumb in this state to fix the value of property taken by eminent domain at the price at which an owner who desires to sell, but is not required to do so, would sell the property in its condition at the time of taking to a purchaser who desires to purchase but is not compelled to do so. It is not the "value to the owner" that is the criterion any more than it is the "value to the taker."

Ordinarily, it is the function of a witness merely to state facts within his personal knowledge and to leave to the jury the task of drawing conclusions from those facts. The danger involved in accepting the opinions of witnesses lies in the fact that the jury may be tempted to substitute their opinions for its own. As a consequence, it is only in the exceptional situation that this character of evidence is admitted. Where, however, the exigencies of the case require that opinion evidence be received, as in inquiries into the value of property expropriated, it must be admitted with great caution, and the weight it should bear must necessarily depend on the qualification of the particular witness to draw the inference. This qualification may appear either from the experience and training of the witness himself, as is usually the case with the testimony of medical experts, or it may appear from the primary facts on which the witness bases his opinion. In either event, the opinion is admitted because of the supposed superior ability of the witness, either from training and experience or

from more direct observation of the surrounding circumstances, to draw an inference better than the jury and thus to assist them in reaching a correct conclusion. It was long ago said that "testimony is like an arrow shot from a long bow; the force of it depends on the strength of the hand that draws it. Argument is like an arrow from a crossbow, which has equal force though shot by a child." But it is obvious that, howsoever truthful the ordinary nonexpert witness may be, the strength of his opinion, when given in evidence, must depend, not on his credibility, but upon his capability to draw a sound conclusion from pertinent facts. To this extent such evidence falls rather in the category of argument than of proof. In other words, it must be assayed for its intrinsic worth rather than on the basis of its source. Measured by these rules, we find the evidence for appellees woefully lacking in probative value.

Two of the witnesses introduced by appellees might be said to qualify as experts on real estate values—Mr. J. B. Davis and Mr. Zack Duff. Each of these witnesses, however, completely nullified the effect of his opinion expressed on direct examination by stating on cross-examination that he based his opinion of value on "what people asked for their property." The inquiry, naturally, was not addressed to the price to be secured in a "seller's market."

The witness, Mr. A. L. Ware, stated on direct examination that he was acquainted with real estate values in the neighborhood "in a general way." Although he stated that he had been engaged in "appraisal work," he did not indicate what kind of appraisals he made, and he contented himself with a mere conclusion as to the value of the property. He was unable to recall any other sales in the vicinity. Certainly, he made no formal appraisal of the property.

The opinions on value of the lay witnesses are almost totally devoid of factual support. So far as this record shows, they were in no better position to form an opinion than the jury itself. The statement made in our former opinion in regard to this case is still apposite:

"Mrs. Begley, and perhaps other witnesses, testified as to the value of her house and lot at the time it was condemned, but without stating any facts

upon which they based their estimates and some, if not all of them, showed that they were unfamiliar with the value of such property, and for which reason it is quite probable that as so given that testimony was improper.''

We are left, therefore, with nothing of substance to support the opinion evidence of appellee's witnesses. Indeed, as to these opinions, and considering the proof for appellees alone, the valuations of Messrs. Davis and Duff, based on ''what people asked for their property,'' are actually lower than the estimates of the witnesses without any experience who undertook to state ''market value.'' It is impossible to avoid the conclusion that the opinions of these witnesses are purely speculative and fanciful. Commonwealth v. Combs, 244 Ky. 204, 50 S. W. (2d) 497. There is no other evidence. We are forced, therefore, to conclude that the proof adduced fails to sustain the verdict and that the verdict is contrary to the evidence.

Judgment reversed.