**CITY OF NEWPORT MUNICIPAL HOUSING COMMISSION, Appellant,**

v.

**TURNER ADVERTISING, INC., et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1960.

As Modified on Denial of Rehearing May 13, 1960.

$57,000, and the nine cases are consolidated on this appeal.

The Commission appeals on the ground that incompetent evidence established an erroneous measure of damages and the awards cannot be justified on any proper basis. Defendant cross-appeals on the ground the statute authorizing this condemnation is unconstitutional.

We will dispose of the cross-appeal forthwith. In Miller v. City of Louisville, Ky., 321 S.W.2d 237, the constitutionality of KRS Chapter 99 was upheld. We see no reason to overrule that decision.

The fundamental problem involves the proper measure of damages in the taking of land which is presently being used for billboard advertising purposes. The defendant owner happens to be engaged in the business of selling billboard advertising space.

The value of the billboard signs as physical property was stipulated. Four expert witnesses for the Commission, basing their opinion on all factors considered by them pertinent, estimated the value of the nine parcels of land as ranging roughly between $21,000 and $24,000. Defendant introduced no evidence concerning the market value of the land.

The defendant did, however, undertake to prove that these particular parcels had a very special value to it in the operation of its billboard advertising business. Defendant's only two witnesses testified to the importance of strategic locations, the method of selling advertising space by "package", and the effect of the loss of one billboard sign upon its entire business. Mr. Turner, defendant's principal witness, originally estimated that the present value of these nine parcels *in its business* was $243,000, which he subsequently reduced to $192,500.

We have some difficulty comprehending the precise theory upon which defendant calculates this sum as constituting the prop-

Morris Weintraub, Newport, for appellant.

Davies & Hirschfeld, Newport, for appellees.

CLAY, Commissioner.

Appellant, Municipal Housing Commission of Newport (hereinafter referred to as "Commission"), pursuant to KRS 99.-370 and 99.420, condemned for slum clearance purposes nine parcels of land owned by defendant, Turner Advertising, Inc. The jury awarded defendant a total of

er and fair valuation of the land taken. The two items that make up this figure (not including the value of the billboards) are designated by defendant as (1) "lost productivity" ($118,000), and (2) "impairment or depreciation to the remainder of the facilities" ($68,000). The first item was computed by determining the *annual gross profit* on each billboard owned by defendant and multiplying it by 15 (the average life of a billboard). The second consists of a *loss to defendant's business* as a result of losing these particular strategic locations which could be sold as a part of a "package deal" in billboard advertising.

All of defendant's testimony was objected to by the Commission on the ground that it had nothing to do with the value of the land taken and involved a speculative business loss which did not constitute a proper measure of damages. The evidence was admitted by the court, and its relevancy is the important consideration before us.

Section 13 of the Constitution provides that no person's property shall be "taken" for public use without "just compensation". Perhaps in no field of the law is more difficulty presented than in determining what constitutes the *property taken* and what constitutes *just compensation* for that property. An enlightening text authority on this subject is Orgel on Valuation Under Eminent Domain (2d Ed.—1953).

Many acts of the government, particularly in the exercise of its police power, though detrimental to certain species of property, do not constitute a "taking" for which compensation must be made. Consequently, in the exercise of the right of eminent domain (a form of sovereign police power), it is possible that the total injury or damages caused to the owner of the land need not be compensated for. See 18 Am.Jur., Eminent Domain, Section 132 (page 756). Thus the constitutional provision generally means that a person is entitled to fair compensation for property taken rather than damages for consequential injuries caused by the exercise of the right of eminent domain. *29 C.J.S. Eminent Domain § 111, p. 919.*

It is therefore necessary first to determine, and keep clearly in mind, what is the property taken. If it is land, the problem is somewhat simplified because this kind of property has physical existence, may be easily measured, and generally has marketability. If the latter factor exists, it is a uniformly accepted proposition that the best test to determine just compensation for the taking of land is its fair market value. Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S.W. 328, 36 L.R.A.,N.S., 456. The fair market value may be stated as the price at which an owner who desires to sell, but is not required to do so, would sell the property in its then condition to a purchaser who desires to purchase but is not compelled to do so. Commonwealth v. Begley, 272 Ky. 289, 114 S.W.2d 127.

As pointed out in the last case cited, this concept excludes both the value of the property *to the owner* and the value of the property *to the taker*. See also Orgel on Valuation Under Eminent Domain (2d Ed.), Vol. 1, Sections 12 to 15. It is therefore necessary and proper in a case where an entire tract of land is taken which has a market value (as in each of the nine cases before us), *to anchor our considerations to that market value.* (There are exceptions, to be noted later.)

Many factors enter into market value, depending upon the nature, adaptability and present or prospective use of the land. Productivity of agricultural land in the way of crops is a proper item to consider. Kentucky Water Service Co., Inc. v. Bird, Ky., 239 S.W.2d 66. Relying on that case, defendant has apparently evolved an ingenious theory that it may properly show the productivity of these particular parcels in profits to its particular business enterprise. The basic fallacy in defendant's reasoning is the false premise that the Commission is taking, in the constitutional sense, one of its intangible assets, and must therefore pay damages not only for the land but for the consequential and incidental injury to its business.

■ If there is one thing about which there seems to be a unanimity of opinion on this subject, it is that the injury to business or loss of profits is not a proper element of compensation for land taken in condemnation proceedings. 18 Am.Jur., Eminent Domain, Section 259 (page 889); Section 345 (page 988); Nichols on Eminent Domain, 3rd Ed., Vol. 5, Section 19.3 (page 222); 7 A.L.R. 134. Orgel on Valuation Under Eminent Domain, 2d Ed., Vol. 1, Section 162 (page 655).

The rationale of this rule is thus stated in Henderson v. City of Lexington, 132 Ky. 390, 111 S.W. 318, 325, 22 L.R.A.,N.S., 20:

"The measure of damage to which the property holder is entitled in cases of this character does not include loss occasioned by injury to his business. He is only entitled to compensation for loss sustained to his property, and this loss is the difference in the market value of the property. Any other criterion of damages would enter the field of speculation, and make the loss incapable of reasonable ascertainment. The market value of a thing is generally the best evidence of its worth—the fairest standard of its value. The individual whose property is taken might not be willing to surrender it for three times its market value. To him it might be associated with sentimental notions that would enlarge its value far beyond the real and substantial. Again, the owner may have established a business in a particular place or building that was more valuable to him than it would be to any one else, and as a consequence the property would have a value to him far above its market value. But these evidences or elements of value are the result of personal or individual preference effort. They affect the individual more than they do the property, and, if allowed to enter into or control the damage, it would be virtually impossible to estimate or fix with reasonable certainty the real value of the property. It must be admitted that, when the standard by which the loss is to be measured is fixed at the market value of the property, the owner in some cases will not secure what is to him its fair value, but, on the other hand, the purchaser ought not to be required to pay more than the fair market value for any property that the law gives him the right to take upon the payment of just compensation, and, when the owner has recovered this price, he will generally get what he is entitled to."

■ Under the foregoing authorities, the character of evidence introduced by defendant with respect to its specialized business operations was irrelevant and incompetent for the following reasons: (1) the incidental injury to defendant's business does not constitute "property taken" for which just compensation must be made, (2) defendant's business operations and profits allocable to each of these lots were too remote and speculative to furnish a recognizable element of the market value of the property taken, and (3) this type of evidence involves an entirely collateral investigation into defendant's accounting system, costs and other factors which are simply beyond the scope of the issue presented in the condemnation proceeding. See City of Los Angeles v. Deacon, 119 Cal.App. 491, 7 P.2d 378.

The evidence offered by defendant is a perfect example of proof which would lead us far afield from the question of the market value of the land taken. As a matter of fact, defendant's two witnesses made no attempt to correlate their computations to the market value of the land. Defendant's principal witness went so far as to say that one of the parcels involved had *no value whatsoever* since no billboard was erected thereon and consequently the lot did not fit into its specialized business enterprise. This witness had originally placed a valuation of $21,000 on this parcel as an asset in its business, showing very clearly that defendant was basing its right to compensation not upon the taking of the land, but upon damages arising from the interfer-

ence with its business operations. (The Commission's witnesses did recognize that this parcel, even without the sign, had a fair market value ranging from $2,100 to $3,-300.)

Defendant calls attention to the case of Richmond & L. Turnpike Road Co. v. Madison County Fiscal Court, 114 Ky. 351, 70 S.W. 1044. This was an unusual type of case wherein a county condemned a turnpike which was owned and operated by the defendant as a toll road. The county was not only taking the roadway, but the entire business of the defendant. On that basis the court held that the intrinsic worth of the company's business condemned was the actual market price of the property and should be paid. A similar exceptional situation was presented in Southern Railway Company v. City of Memphis, 126 Tenn. 267, 148 S.W. 662, 41 L.R.A.,N.S., 828, wherein a city condemned a railroad terminal. The land taken had no value except for a very special use, and it was held that the owner was entitled to compensation for the full value of that use.

The above two cases are extreme, and involve an exclusive special monopolistic use of land. Admittedly there may be unusual circumstances where the market value test will not work. See Orgel Under Eminent Domain, 2nd Ed., Vol. 1, Section 18 (page 84). However, the parcels of land involved in this controversy do not fall within that special class which requires resort to criteria other than market value. These lots do have a market value. They have possible uses other than their present use. They are not absolutely essential to the conduct of defendant's business, and similar property for the same use may be acquired by purchase or rental. Under such circumstances the market value furnishes a fair measure of just compensation. The adaptability of the parcels to billboard advertising uses is but a factor to consider in determining market value.

Defendant's claim to damages for "impairment or depreciation to the remainder of the facilities" goes still further afield in an attempt to recover damages for prospective injury to its business. It involves so many remote and speculative factors as to throw no comprehensive light upon the market value of the land taken.

We must, therefore, conclude that defendant's evidence with respect to present and potential profits and losses was irrelevant and incompetent. It obviously afforded the jury an opportunity to award damages greatly in excess of the proven market value of the property, and the verdicts cannot be justified upon any competent evidence in the record.

The judgments are reversed with directions to grant new trials on the issue of compensation.