COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Mount TAYLOR, Jr., et al., Appellees.

Court of Appeals of Kentucky.

June 7, 1963.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Raleigh O. Jones, Lyndon, for appellant.

Robert J. Watson, Middlesboro, for appellees.

STEWART, Chief Justice.

This is a condemnation proceeding instituted to obtain right of way to relocate and reconstruct U. S. Highway 119 in Bell County. The commissioners appointed by the Bell County Court allowed appellees $4500 for their property. On appeal to the circuit court, a jury awarded appellees $8250 for land taken, for damages to the remainder and for a permanent easement. This appeal is from the judgment entered on the verdict.

Appellees, Mount Taylor, Jr. and his wife, Pauline, owned two tracts of land embraced in the highway relocation and reconstruction project. One parcel, containing 9/10 of an acre, fronted on the north side of the highway. Appellant condemned approximately 40% of it, acquiring the portion which included all the improvements, consisting of a 4-room frame house, garage, utility house, outhouse and coal house. The other tract, located 500 feet east of the first tract and on the south side of the highway, consists of a lot 100 x 150 on which is situated a 6-room frame house, storage house and outhouse. The lot is below the grade of the existing highway,

with a creek in front, so that it is necessary to cross a footbridge to gain access to the dwelling on the lot. Appellant condemned 1/10 of an acre of this lot for a permanent easement in order that its employees may enter upon the property to clean and maintain a ditch outlet to a culvert going under the highway.

James Workman, appellant's appraiser witness, estimated the value of the land taken from the northern tract at $3390 and the damages to the remainder at $100. In respect to the easement over the south tract, he valued the land before and after the taking, leaving a difference of $80. The trial court refused to permit Workman to cite in his testimony comparable sales to substantiate his figures; and this evidence was entered by avowal. His total valuation on the property involved was $3570.

■ A perusal of the testimony made on avowal demonstrates the error of the trial court's rulings on the comparable market data offered and rejected, because the evidence of voluntary sales of other property in the neighborhood of a somewhat similar nature, such transactions having been consummated within a year or two of the institution of this proceeding, was competent and therefore admissible. With reference to the probative importance of evidence of comparable sales it has been said:

"Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than the *speculative opinions* of witnesses; for truly, here is where 'money talks.' The question whether such evidence shall be admitted does not depend upon any fundamental principle of the law of evidence, but is a purely practical one, depending upon whether there is a net gain or loss to the orderly and expeditious administration of justice in land damage cases by the use of such evidence." (Emphasis added.)

This excerpt is taken from Nichols, Eminent Domain (3rd Ed. 1952), vol. 5, sec. 21.3, p. 275. See also Stewart v. Commonwealth, Ky., 337 S.W.2d 880; Commonwealth v. Begley, 272 Ky. 289, 114 S.W. 2d 127; West Kentucky Coal Co. v. Dyer, 161 Ky. 407, 170 S.W. 967; and Music v. Big Sandy & Ky. R. R. Co., 163 Ky. 628, 174 S.W. 44.

We conclude the judgment must be reversed for the reason, as pointed out, that competent evidence pertaining to comparable sales was wrongfully excluded.

It is next contended the evidence of appellees' witnesses in fixing the value of the property located on the north side of the highway was based almost entirely upon the replacement cost of the improvements, without taking into account any diminution for depreciation. The testimony of Pauline Taylor, one of the condemnees, appears to follow this line of proof in making her evaluations. Her husband, the other condemnee, weaves in evidence of a similar nature in his testimony. This Court, in considering estimates concerning the cost of improvements to prove the before-taking value, without any allowance for depreciation, has held:

"Testimony as to replacement cost of new construction is erroneous, since the landowner is entitled to recover only the present value of the property taken in its depreciated condition." See Commonwealth v. Rankin, Ky., 346 S.W.2d 714.

We make mention of the foregoing facts, and the law applicable thereto, as there will unquestionably be a retrial of this action.

■ An additional complaint is that appellees' witnesses, having no special training or experience in appraising or evaluat-

ing real estate, were not qualified to testify as to the values of the property involved here. We have not adhered to the rule that witnesses must be experts in order to state their opinions as to real estate values. In 32 C.J.S. Evidence § 545, p. 299, this pertinent statement is set forth:

"A witness, to be qualified to testify as to the value of realty, must know the property to be valued and the value of property in the vicinity, must understand the standard of value, and must be possessed of the ability to make a reasonable inference."

We quote this general rule for the future guidance of the trial court in the retrial of this case.

A final complaint of appellant relates to the tract on the south side of the highway affected by the permanent easement. All of appellees' witnesses fixed the value of the easement taken at $1500. No factor of any kind was given to substantiate this figure.

The evidence shows without contradiction that appellant, in securing the easement, did so to enable its employees to enter upon appellees' lot in order to clean and maintain a ditch outlet to a culvert which passes under U. S. Highway 119. The acquisition and future exercise of this right will in no wise affect, or even change, appellees' use and enjoyment of this property. Nor is access to the road limited to any extent. Actually, the proof reveals that the duty assumed by appellant in taking over the burden of keeping the ditch open is nothing less than a benefit conferred upon appellees because it relieves them of such a task in the future.

Under the circumstances recited we conclude appellees should recover only nominal damages as a result of the taking of the easement. What an award of nominal damages should be as to amount is discussed in

Stoll Oil Refining Company v. Pierce, Ky., 343 S.W.2d 810.

Wherefore, the judgment is reversed and the case is remanded for a new trial in conformity with this opinion.