COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Luther F. ROBERTS et al., Appellees.

Court of Appeals of Kentucky.

May 7, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Phillip K. Wicker, Somerset, for appellant.

C. Homer Neikirk, Somerset, for appellees.

DAVIS, Commissioner.

Appellees obtained judgment, pursuant to the jury's verdict, for $11,000 as the compensation due them incident to this highway condemnation action. The appellant Department of Highways assails the judgment (1) as palpably excessive and unsupported by sufficient evidence of probative value, and (2) because witnesses for appellees recited value estimates computed from irrelevant measures of damage.

The right-of-way taken is for reconstruction and relocation of a portion of Kentucky Highway 90 between Burnside and Monticello. Prior to the taking the farm of appellees consisted of a tract of 106 acres, having frontage along the east side of existing Highway 90 for a distance of about 2300 feet. The improvements on the farm included a one-story, five-room frame residence, a tobacco barn, a stock barn, a chicken house and a drilled well. About 71 acres of the farm were level to rolling, tillable land, and the remaining 35 acres, situated along the rear or eastern portion of the farm, were hilly and rocky timberland. A small branch traversed the farm, in the rear of the improvements, running in a northwardly course. The evidence shows that the entire farm, with all improvements, had been assessed for taxation by appellees at the sum of $4,800. There is no showing as to the average percentage ratio of assessed value to fair cash value in Wayne County.

The permanent right-of-way taken consists of 6.51 acres, which is comprised of a strip extending south to north through the entire farm; the right-of-way strip is 2780 feet in length and its width varies from 80 to 120 feet. The new road severs the original boundary into two tracts: one of about 35 acres, containing all of the improvements and the drilled well, which is west of the new road; the other tract, lying east of the new road, has no improvements and contains about 29 acres of tillable land and the 35 acres of hill woodland.

Beginning at the southern boundary of the farm, the new highway is on a fill, the height of which varies from two to five feet; the remaining course of the new road is partially at grade level, then into a shallow cut, and finally upon a three-foot fill as it leaves the farm on the north. The new road is a free access road. In addition to the permanent right-of-way, three permanent easements aggregating 0.51 acres, and a temporary easement of 0.08 acres are required. None of the improvements is taken.

There were eight valuation witnesses for appellees and four for appellant. The range of the before valuations expressed by appellees' witnesses was from $35,000 to $43,000; for the appellant the before values were estimated as between $30,000 and $30,300. There was less difference between the two sets of witnesses with respect to the after value. For appellees the after values were said to be from $23,000 to $32,000, whereas the appellant's witnesses placed after values from $23,500 to $24,225. From these witnesses the respective differences between be-

fore and after values were computed as being between $10,000 and $18,750 for appellees, and for appellant as between $5,775 and $6,500. As noted, the jury's verdict was for $11,000, and well within the range of the testimony.

There was evidence that about an acre of the land remaining on the east side of the new road will be so situated as to present some difficulty in reaching it with farm machinery; this is because of the branch. The evidence reflects that some additional or new fencing will be required if the land is used for livestock, although the exact amount of it was not disclosed.

The valuation witnesses for both sides used sales of other properties deemed by them to be comparable to the subject property. It may fairly be said that the Department's witnesses used a figure of about $300 per acre as the overall before value of the land, whereas the witnesses for the appellees used $400 per acre as the average before value figure. This, of course, accounts for the wide variance in their estimates of the farm's value before the taking. It appears, however, that the appellees' witnesses changed their views as to overall value when they came to the matter of reckoning the after value; in this phase of the case the witnesses for appellees appear to have employed per acre valuation, less than $300. It is difficult to find any substantial basis for this radical change in the before and after values.

■ The witnesses for both sides recognized that dividing the tract in two has some adverse effect upon the overall market value. However, it was shown by all witnesses that each tract may be farmed, and that the two tracts may be farmed, as a unit, albeit with less convenience than had obtained when it was in one tract. The element of the inconvenience to appellee Luther Roberts is clearly not a compensable item as such; only as the division of the land may affect market value of what remains may it be considered compensable.

See Com., Dept. of Highways, v. Sherrod, Ky., 367 S.W.2d 844, where it is said:

> "Evidence of factors bearing on diminution of value should be addressed to how they will *affect market value* and not how they will *hurt* the owner or make less advantageous the use of the property for his particular purposes, or create conditions that he would *like* to remedy. And no *price* should be put on the individual factors."

The present case was tried after the decision in the Sherrod case, supra, and the matter of separating the amount allowed for land taken and resulting damages was handled as prescribed therein. However, one may not read the evidence for appellees and escape the conclusion that each witness for appellees did in fact place considerable emphasis on the inconvenience to "Uncle" Luther Roberts. It was suggested that Mr. Roberts was 77 years of age when the case was tried, and that he was not able to get into the fields to do much personal work; as the land had been situated before the taking, he was able to "farm" it from the homesite, but after the taking he will not be able to do so. Cf. Com., Dept. of Highways v. Herndon, Ky., 378 S.W.2d 620.

It was shown that after this reconstruction the appellees will have substantial frontage, as to the 35 acres with the improvements, both on the old and new roads; additionally, there will be the substantial frontage afforded the severed 64-acre tract on the new road. For the appellant there was testimony that the land remaining to the appellees would have some enhancement in value due to the availability of the frontages for building sites. This was countered for the appellees by evidence that since the property is about six miles north of Monticello there is no indication of a reasonable demand for building sites.

Appellant points to Louisville & N. R. Co. v. Burnam et al., 214 Ky. 736, 284 S.W. 391 (1925), wherein this court analyzed a verdict in its relation to the tax assessment on the entire farm. In the Burnam opinion the

court pointed out that if the amount of the award were loaned at 6% interest it would result in an annual income of $7.60 per acre for every acre of the entire farm. Utilizing that same formula, appellant suggests that the amount awarded, placed at 6% interest, would produce an income in excess of $5.50 per acre. Appellant further argues that since the total land taken (about 7 acres) is slightly less than 7% of the original 106 acres, and the award equals $11,000, if this figure should be projected as applicable to the entire farm, it would produce a value in excess of $163,000—more than 34 times as great as the tax assessment evaluation. Additionally, it is noted that none of the improvements have been taken by the right-of-way. While we do not consider these arguments as controlling here, they do have some persuasive value.

■ One of the witnesses for the appellees gave the highest estimate of the difference between the before and after values; namely, $18,750. This witness related that he had arrived at his before value by placing an overall value of $400 per acre on all of the farm. Then, in fixing his after value, he reassigned $400 per acre for the 35 acres and improvements on the west side of the new road, to which he added $300 per acre for 26 acres of tillable land in the tract on the west side of the new road, and finally added only $50 per acre for 37 acres of hill land in the west tract. It is quite incredible, and supported by no other witness or evidence, that the hill land could have had $400 per acre value before—and certainly there is no reason assigned to account for putting the hill land back into the after value minus 87.5% of its before value. Neither are we able to conclude that the figure which this witness fixed as the difference in before and after values was harmless error, merely because the jury's verdict was substantially less than the sum

he suggested. When the incredible evidence of this witness is coupled with the recurring injection of the personal inconvenience to Mr. Roberts, and considered with the liberality of the verdict, we must assume that the high figure as to difference in before and after values played a significant part in the ultimate verdict of the jury. We have another instance wherein the evidence of the witness was of some probative value, but failed to possess sufficient probative value to support the estimate he made. To a lesser degree the same may be said of the other witnesses for appellees. There is simply no adequate showing that the greatly depressed after values to which they testified could reasonably flow from the factual situation at hand. In such cases, we are impelled to reverse the judgments based on inadequately supported verdicts. Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472; Com., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922.

■ Since there may be another trial, we observe that it was not appropriate for the appellee Luther Roberts to premise his testimony of market value on "what the property is worth to me." Com., Dept. of Highways v. Begley, 272 Ky. 289, 114 S.W. 2d 127. In the event of a new trial, the rule announced in Com., Dept. of Highways v. Fister, Ky., 373 S.W.2d 720, will apply to the owner of the land.

■ Neither was it appropriate for the witness Hudson to express his value testimony in terms of what he had considered offering for the property. Com., Dept. of Highways v. Combs, 229 Ky. 627, 17 S.W. 2d 748. Upon another trial care will be taken to avoid repetition of this incident.

The judgment is reversed for new trial and further proceedings consistent with this opinion.