# Pittsburgh Outdoor Advertising Corporation v. Urban Redevelopment Authority of Pittsburgh

*Frank W. Ittel, Jr.*, for plaintiff.

*Richard W. Kelly*, for defendant.

McKAY, J., June 11, 1968.—In this eminent domain action, following a verdict for plaintiff in the amount of $10,250, both parties have moved for a new trial.

The property of plaintiff which was appropriated by the defendant Authority was an irregular piece of land in the East Liberty urban renewal project in the Twelfth Ward of the City of Pittsburgh, situate at the northwest corner of Hamilton Avenue and Dahlem Street. It had a frontage on Hamilton Avenue of 73.93 feet, an average width of 11.04 feet, and contained approximately 820 square feet. On it there had been erected by plaintiff, and in position for many years, an Outdoor Advertising signboard consisting

of three panels, each containing one advertisement of separate advertisers. Because of its unusual location, facing two streets, the shape of the three boards and the fact that the district is presently zoned so to prevent new signboards from being erected, the property had more than usual value.

The record, while over 300 pages in length, consisted of the testimony of but four witnesses: Henry Posner, the president of the plaintiff corporation; Stanley W. Arnheim and Leonard P. Kane, expert valuation witnesses for plaintiff, and one expert valuation witness for defendant, John K. Ellis.

Mr. Arnheim gave his opinion of the value of the property as $15,000; Mr. Kane, $16,200, and Mr. Ellis, $7,890.

The valuation experts testified at great length, both as to their qualifications and as to the factors which they took into consideration in arriving at their respective valuations. The court charged the jury fully as to the law of damages in eminent domain cases, quoting from the Eminent Domain Code, and submitted to the jury the question of the fair market value of the property at the time of the taking.

The questions presented on the motions for new trial involve the nature of the signboard property and the income from it. One of the witnesses testified that there is no literature in the eminent domain field dealing specifically with how to evaluate small properties whose highest and best use is for sign boards.

## PLAINTIFF'S CONTENTION

The principal contention of plaintiff is that the trial judge erred in refusing to hold that the income from the property was rent. It contended that it was thereby denied the privilege of capitalizing that rental in determining the fair value of the property. It concedes that its witnesses were permitted to testify freely that

they took the reasonable rental value of the property into consideration in arriving at their opinion of its fair market value, but complains that the court erred in not permitting its counsel to refer directly to the income received from the property as "rent" so that it could capitalize it and argue that factor to the jury.

The evidence disclosed that plaintiff entered into common written contracts with advertisers for the three spaces on the board. A sample contract was offered in evidence. Hence, its nature was, of course, for the court to construe. It contained, inter alia, the following language:

"We [the advertiser], the undersigned, hereby authorize and direct you [the plaintiff], to execute for us a Poster Advertising Display, or Displays, in cities, towns and districts specified herein, upon terms and conditions of this contract, as follows:

"Terms: Net Cash".

Then follow promises to pay a specified sum monthly in advance for each respective showing, at a specified rate for said showing; a provision for cancellation on failure to pay; an agreement by the advertiser to furnish the necessary posters to keep the display in first class condition; a provision that the contract is non-cancellable and blanks wherein may be inserted data such as shipping costs, the name of the city, size of the showing, the number of months the contract was to continue in effect, and the like. It is entitled "Contract Number ———" and is a printed form bearing plaintiff's name and address at the top.

There is nothing whatever about the contract which bears the slightest earmark of a lease. As a matter of fact, plaintiff's counsel frankly concedes that the paper is not a lease. He argues that the income from the property is rent whether the contract providing for it is a lease or not.

The conduct of the respective parties, i.e., the plaintiff landowner and the advertisers, further indicates that the arrangement between the parties did not constitute a rental. Plaintiff applied all of the advertising material to the panels and the advertisers had no right to even be on the premises, as a right of possession which is inherent in a tenancy.

Inasmuch as the relationship between plaintiff and the advertisers was governed by a written contract, which in the court's opinion was not a lease, and inasmuch as the advertisers had no right to occupy or even go on the land, but had only the right to supply advertising material, the trial court properly held that any income derived from the showing of advertising on the signs, was not rent, whatever else it was.

This conclusion is fortified by a reference to the Eminent Domain Code of June 22, 1964, Special Sess., P. L. 84, sec. 705, subsec. (2) and subsubsec. (ii) 26 PS §1-705, which reads that:

"(2) A qualified valuation expert may testify . . . " as to

"(ii) The rent reserved and other *terms of any lease* of the condemned property or comparable property which was in effect within a reasonable time before or after the date of condemnation". (Italics supplied.)

In the face of this language, we are unable to understand how plaintiff can contend that an expert can describe in his testimony the income from the subject property as rental.

It may be added that, in any event, the ruling of the trial court did plaintiff no harm, for the court permitted plaintiff's witnesses to testify fully as to the reasonable net rental value of the condemned property, which is permissible by subsubsection (iii) of the code, and so the witnesses did. Inasmuch as both of plaintiff's valuation witnesses equated the reasonable net rental value of the property with what they

termed the "rent" received from it, and stated that they considered the former among the factors in arriving at the property's fair market value, there could be no harm done to plaintiff's position by the court instructing the jury that the income was not rent, even if it were rent.

The second reason advanced by plaintiff for a new trial is that the verdict is against the great weight of the evidence. We find no merit in this contention. It is based solely on the position that the two experts whom plaintiff called knew more about the value of signboard properties than did defendant's sole witness. On the other hand, defendant's witness, Ellis, testified to exceptionally extensive qualifications as a real estate expert, particularly with respect to the property in the neighboring districts of Pittsburgh, and we would usurp the function of the jury were we to say that plaintiff's two expert witnesses were so far better qualified than defendant's single expert that a new trial must be granted on that ground.

## DEFENDANT'S CONTENTION

Defendant rests its motion for a new trial on the contention that plaintiff's witnesses, Arnheim and Kane, described the income from the property as income from the business conducted on the property, and that the Eminent Domain Code bars a valuation witness from considering that type of income in arriving at an opinion as to the fair market value of the premises.

We agree with defendant that the income from a business on the condemned property is not one of the factors that a valuation expert may consider in forming an opinion of the value of the property. This is true not only because sound reasoning supported by authority* holds that fair market value, and not

---

* City of Newport Municipal Housing Commission v. Turner Advertising, Inc., 334 S. W. 2d 767. (Ky. Ct. of App.)

profits from business conducted on the property, is the measure of damages in eminent domain proceedings, but because the code itself expressly excludes "the capitalized value of the income or profits attributable to any business conducted thereon": Act of June 22, 1964, Spec. Sess., P. L. 84, sec. 705, 26 PS §1-705.

The trial court so ruled repeatedly throughout the case and so instructed the jury.

Defendant complains, however, that the trial court inconsistently refused to strike out the testimony of plaintiff's valuation experts who listed such profits from the "business" among the many factors that they considered in arriving at the fair market value of the property.

There would be merit in defendant's contention at this point if business profits were the sole factor mentioned by Arnheim and Kane, or if defendant's motions to strike were limited to that one item.

However, instead of singling out that one objection to the testimony of the two witnesses, or moving to strike only where mention of business income was made by them, defendant permitted both Arnheim and Kane to testify at great length, listing many factors which they took into consideration, all but the business income factor being valid factors, and then moved to strike out all of the testimony of the witnesses.

For the trial court to have granted this motion would have taken from the jury a great mass of relevant and valuable testimony as to valuation, merely because a single incorrect factor was listed by the two witnesses among the multitudinous proper factors named. This would have been error, as was expressly held in the case of Miller v. Windsor Water Co., 148 Pa. 429.

In that case, a witness in an eminent domain case had testified at length. The greater portion of his

testimony was proper, but, because he testified as to one improper element, a motion was presented to strike out all of his testimony. The trial court refused to grant the motion, and the Supreme Court affirmed, stating, at page 440:

"There was no error in refusing to strike out the testimony of Albert K. Rentschler. Portions of it, at least, were unobjectionable. . . . If the court had been asked to strike out a specified portion of it, a different question would have been presented. But no such request was made. The court was asked 'to strike out the testimony of this witness' (as in the instant case), and that must be taken to mean the whole of his testimony. To have done that would have been error".

In commenting on this case, Orgel, in his work on Valuation Under Eminent Domain, vol. 1, §133, at page 576, states:

"But even when improper testimony has been admitted, the courts are slow to reverse in the absence of a showing that the improper testimony has had a material effect on the result. [Footnote]

"In general, unless the testimony of the witness is such as to show a complete misconception of the proper method of determining value, or ignorance of the subject matter, his testimony will be admitted; and the insufficiency of his information, or the basis of his opinion, will affect the weight of his testimony".

The above language is peculiarly appropriate in the instant case. In the first place, the testimony of both Arnheim and Kane did not substantially sway the determination of the jury, for the former's valuation was $15,000 and the latter's $16,200, whereas the jury awarded but $10,250.

Beyond these considerations, both of these witnesses equated the "profits from the business" with the reasonable rental value, an admittedly valid factor for an expert's consideration. It follows that their

testimony did defendant no harm. Finally, it must be remembered that the trial court instructed the jury that the property was not a "business", and that profits from it were not proper factors for valuation experts to consider.

In our opinion, both parties have fallen into error in assuming that the income from the billboard activity had to be either rental or income from a business. In our opinion, it was neither. It was merely the equivalent of reasonable rental of the land with the billboard on it and, as such, was a legitimate factor to be considered in arriving at the fair market value of the property.

Accordingly, we are unable to agree with the position of either plaintiff or defendant in their respective motions for a new trial and the motions must be overruled.

ORDER

And now, June 11, 1968, after argument and a consideration of the testimony and briefs submitted by counsel for the parties, it is ordered that the motions for new trials filed by plaintiff and defendant be and they are hereby refused.

Judgment is hereby entered on the verdict on receipt of the verdict fee.