**COLUMBIA GAS OF KENTUCKY, INC., Appellant,**

v.

**Everett MAYNARD et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 14, 1975.

Rehearing Denied Feb. 20, 1976.

**4**

J. K. Wells, Wells, Porter & Schmitt, Paintsville, E. D. Gerwig, Columbus, Ohio, for appellant.

R. Coleman Endicott, Lexington, for appellees.

PALMORE, Justice.

Columbia Gas of Kentucky, Inc., appeals from a judgment entered pursuant to a jury verdict awarding Everett Maynard and various members of his household a total recovery of $16,172.00 for the destruction by fire of his house and outbuildings, together with their contents. The questions before us on the appeal are confined to the matter of damages and sufficiency of evidence in that respect.

The house was built in 1956 and was destroyed in 1971. It consisted of two stories, with four rooms and a utility room downstairs and two rooms upstairs. Excluding porches, its outside dimensions were 28' x 26'. It had pine floors, an asbestos shingle exterior, and a tin roof. There was no plumbing and no central heating system. After the fire a new house was built at a cost of $17,000. During the interim of some 10 months the family lived in part of a grocery store owned and operated by Maynard. $1172 of the judgment represented this item of recovery. The remaining $15,000 was awarded for loss of the house, a wash house, furniture, clothing, and other personal property.

A most unusual aspect of the controversy is that Maynard neither owned the land on which the house was located nor had any rental or other kind of contract entitling him either to possess or to purchase it. Ordinarily, of course, a permanent structure becomes a part of the real estate, but in this instance the landowner disclaimed any ownership interest in the building, so they must be considered as moveable personal property.

Maynard and his only other valuation witness (the friendly landowner) expressed opinions as to the "fair market value" or "fair and reasonable market value" of the house at the time it was destroyed. The term "market value" connotes, of course, sale value as distinct from intrinsic value or value to some particular person. On that basis, the market value of this particular building was the price it would have brought if sold by a willing seller to a willing buyer, separately from the land. However, neither witness gave any testimony that would qualify him to express an opinion as to the value of the buildings if sold separately from the land on which they were situated. Hence the appellant's motions to strike their testimony relating to the value of the buildings should have been granted. The evidence had no probative value and therefore was insufficient to support a verdict.

Actually, according to previous decisions of this court it appears that "when a building has been destroyed by fire the measure of damages is not the market value of the building destroyed, because a building apart from the ground on which it stands cannot be said to have a market value, but is the fair and reasonable value of the building destroyed as it was when and where destroyed." *Prestonsburg Superior Oil Gas Co. v. Vance*, 215 Ky. 77, 284 S.W. 405, 408, 47 A.L.R. 483 (1926). See also *Kentucky & West Virginia Power Co. v. Kilburn*, 304 Ky. 635, 201 S.W.2d 896, 900 (1947), and *Louisville & Nashville R. Co. v. Howe*, Ky., 243 S.W.2d 905, 908 (1951). We are not satisfied, and do not hold, that as against market value this is the proper criterion of recovery for the destruction of a building situated on real estate in which the owner of the building has no more interest than a tenancy at will, but even if it were, the valuation testimony produced in this case was not premised upon it and would not have supported an instruction on that basis.

Maynard himself gave the only evidence concerning the value of the various contents of the building. His experience in buying and selling similar property probably qualified him to express an opinion as to their market values (that being the criterion stated in the instructions), but he admitted that his estimates were based only on what the various items were worth to him, as follows:

"Q. 438 I noticed this morning when Mr. Endicott was asking you about these fig-

ures, he asked you if this was what it was worth to you. I believe that's what these figures are, isn't it?

"A. Yeah.

"Q. 439 How much the stuff was worth to you?

"A. That's right.

"Q. 440 And that's the full basis of these figures?

"A. What it's worth to me.

"Q. 441 What it's worth to you, not what it's worth to the jury, not what it's worth to me, or anybody else, but just what it's worth to you?

"A. That's right. It might not be worth two cents to you."

The measures of damages stated in the trial court's instructions to the jury were (a) "reasonable market value of his home, and wash house and contents thereof" and (b) "such reasonable amount, if any, you find was necessary to provide them sufficient housing facilities from November 8, 1971 to August 30, 1972," neither award to exceed the amount demanded on that account in the complaint. Market value was defined as "the price which the building and contents would have brought, if offered by one who desired to sell, and was not compelled to do so, and was bought by one who desired to purchase, but was not compelled to have it."

By separate instruction the jury was advised as follows:

"Plaintiff, Everett Maynard, did not own the land his house and wash house set on [sic], and did not have a legal and forcibly [sic] right to keep them there, except at the will and sufferance of the land owner, Edgar Castle, who could tell him to remove them on a thirty-day notice, if he so desired. In determining a fair market value of the house, you will take into consideration that the purchaser would have known that he could be compelled by the land owner to remove the house and wash house on a thirty-day notice, to some other location."

Since the instructions relating to the building and contents were given substantially as offered by the defendant, which is the appealing party, we cannot consider whether they set forth a proper measure or measures of damages, but are confined to the narrow issue of whether the evidence was sufficient to support recovery under any valid theory. Cf. *Com., Dept. of Highways v. Merrill*, Ky., 383 S.W.2d 327, 331 (1964); *Clifton Land Co. v. Reister*, 186 Ky. 155, 216 S.W. 342, 343 (1919); *Dickerson v. Martin*, Ky., 450 S.W.2d 520, 523-524 (1970). That issue was preserved for review by the appellant's motion for a directed verdict on the ground that the plaintiffs had offered no competent evidence on damages.

Regardless of the kind of property or type of proceeding, when the criterion of recovery is fair market value, what the property may have been worth to the owner is irrelevant. Cf. *Com., Dept. of Highways v. Roberts*, Ky., 390 S.W.2d 155, 158 (1965). So, if market value had been the correct measure of damages for all of the property lost by Maynard, his evidence of what it was worth to him would not have raised a submissible issue of damages. However, this court has recognized that market value is not a fair basis of compensation for the loss of "household goods and wearing apparel," the proper measure being "the actual value in money . . . to the owner for the purpose for which they were intended and used . . . excluding sentimental or fanciful value which for any reason he [the owner] might place upon them." *Davis v. Rhodes*, 206 Ky. 340, 266 S.W. 1091 (1925).

Under this rule of damages we think that the owner's estimate of what the items were worth to him, unless so obviously preposterous as to be devoid of probative value, is enough to support an award by a properly instructed jury. That the award must represent what the property was actually worth to him in money, excluding any sentimental or fanciful value that for any reason he might place upon it, is a qualification to be incorporated in the instructions.

We conclude from the foregoing analysis that Maynard's testimony was sufficient to raise an issue with respect to the value of his household goods and wearing apparel. It was therefore sufficient to defeat the gas company's motion for a directed verdict. It did not, of course, support any of the instructions actually given, but as we have pointed out, the case is not before us on objections to the instructions pertaining to property values. If a plaintiff's evidence is sufficient to support a proper instruction under any theory fairly encompassed by the pleadings, a motion for a directed verdict by the defendant is not sustainable. "A party may plead much and prove less and yet be entitled to go to the jury on the issues established by his proof." *Watson v. Bailey*, 279 Ky. 671, 132 S.W.2d 53, 55 (1939). See also *Scudamore v. Horton*, Ky., 426 S.W.2d 142, 146 (1968). In short, when the plaintiff has enough evidence to support a verdict in his favor on any issue, the appropriate procedural means for excluding other issues from the jury's consideration is by objection to any and all instructions that depend upon or purport to submit those issues.

The gas company did specifically object to the instruction authorizing an award of "such reasonable amount, if any, you find was necessary to provide them sufficient housing facilities from November 8, 1971 to August 30, 1972, not to exceed $15.00 per day," etc. The grounds of the objection were that "this. is not a proper element of recoverable damages and because there was a complete absence of evidence of the amount reasonably necessary for this purpose."

In the instance of real estate, an owner-occupant who is wrongfully forced to vacate the premises for a temporary period of time is entitled to damages measured by "the diminution in the value of the use of the property" during that time. *Adams Construction Company v. Bentley*, Ky., 335 S.W.2d 912, 913 (1960). As we have said in the beginning, however, a house cannot be considered as real estate while under an ownership different from that of the land on which it was situated. The closest analogy to it is a house trailer or "mobile home."

It has been held that damages for the loss of a commercial vehicle may include compensation for the loss of its use during such time as was reasonably necessary for the owner to replace it, and that reasonable rental value is admissible as a relevant factor in determining the value of such "use." *Pope's Adm'r v. Terrill*, 308 Ky. 263, 214 S.W.2d 276, 277–278 (1948). Compare also *Adams Construction Company v. Bentley*, Ky., 335 S.W.2d 912, 913 (1960), *supra*. We consider that the same principle should apply to the loss of a home owned and occupied by one who has no permanent interest in the land on which it is situated. Hence the instruction given on that issue not only was erroneous, but had no evidentiary support. The gas company is correct also in its contention that the damages for loss of use must be confined to a reasonable rather than the actual time required for replacing the structure. *Howard v. Adams*, Ky., 246 S.W.2d 1002, 1003 (1952); *Towles v. Perkins*, 266 Ky. 25, 98 S.W.2d 27, 28 (1936).

The judgment is reversed with directions for a new trial limited to the issues of damages. .

All concur.