**WEST KENTUCKY COAL COMPANY et al., Appellant,**

v.

**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellee.**

Court of Appeals of Kentucky.

June 7, 1963.

James F. Gordon, Madisonville, Joseph J. Leary, Frankfort, for appellant.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Asst. Atty. Gen., Paul E. Hunley, Frankfort, Frank D. Berry, Madisonville, for appellee.

CULLEN, Commissioner.

The Commonwealth condemned, as right of way for a four-lane nonaccess highway, a strip of land containing 8.50 acres, across

one corner of a 614-acre tract owned by West Kentucky Coal Company in Hopkins County. The highway will isolate or land-lock a triangular parcel of 10.50 acres. The jury in circuit court awarded $6,700 damages and judgment was entered accordingly. The coal company has appealed from the judgment.

Under a little more than 300 acres of the 614-acre tract there are seams of No. 11 and No. 12 coal (the No. 11 seam lies four feet and four inches below the bottom of the No. 12 seam). Around 200 acres of the tract are "barren" with no coal under them. The remainder of the tract (around 100 acres) originally contained both the No. 11 and No. 12 seams, but the No. 11 seam had been removed to a considerable extent by underground mining. All of the isolated 10.50-acre parcel, and about one-half of the 8.50-acre right of way (longitudinally), were in the area where the No. 11 seam had been removed. The other one-half of the right of way still has both seams beneath it.

The Commonwealth's witnesses stated that it would not be economically feasible to attempt to strip-mine the No. 12 seam in the area where the No. 11 seam had been mined, because of insufficient ground support for the mining equipment, water problems, etc. They valued at $300 per acre so much of the right of way as had both seams under it. The remainder of the right of way, and all of the isolated 10.50-acre parcel, they valued at $150 per acre (the coal at $50 and the surface at $100). They treated the isolated parcel as having been completely destroyed in value. The total damage, according to their estimates, was around $3,500.

The coal company's witnesses gave their opinion that the No. 12 coal over the mined-out No. 11 seam could feasibly be strip-mined. They estimated the amount of recoverable coal under the right of way and under the isolated parcel at 240,000 tons, and without using a per ton or per acre value they estimated the damages at

around $120,000 (which would average more than $6,000 per acre).

■ We shall first dispose of the appellant's contention that the damages are grossly inadequate. In view of the testimony of the witnesses for the Commonwealth that only a relatively small amount of the coal under the right of way and the isolated parcel was recoverable because of the presence of the old mine workings where the No. 11 seam had been mined out, and in view of their testimony that even where both seams were recoverable the value was only $300 an acre, we cannot say that the verdict is inadequate. (Some weight also is entitled to be given to the fact that the coal company listed its land for taxation at a top value of $160 per acre.) We have no source of knowledge that tells us an estimate of a value of $6,000 an acre for coal land in Hopkins County is credible and an estimate of $300 an acre is incredible.

■ The appellant attacks on various grounds the testimony of witnesses for the Commonwealth. It is contended that the testimony of the witness, Parks, should have been stricken; first, because he testified that the coal company's entire tract of land was worth more *after* the taking than *before* the taking, and, second, because the "comparable sales" relied upon by Parks were not comparable.

The appellant maintains that Parks gave a "before" value of $117,100 and an "after" value of $124,088, showing an *enhancement* of close to $7,000. The record discloses, however, that although Parks initially stated a "before" value of $117,100 he quickly corrected it to $125,700. Furthermore, it is reasonably clear from Parks' testimony that he estimated the damages at $3,522. A considerable portion of his examination was devoted to how he computed the damages, and his "before" and "after" values were very briefly touched on. It appears that the discrepancy between the damages as indicated by his "be-

fore" and "after" values, and the damages as separately computed by him, is attributable simply to a slip of the tongue or of the mind in stating the "after" value. In our opinion the jury reasonably would have concluded from his testimony as a whole that he estimated the damages to be $3,522, and the jury should not have been confused or misled by the fact that the difference between his "before" and "after" values did not equal that amount.

■ As concerns Parks' testimony with regard to comparable sales, we think the way this testimony was brought out is significant. On direct examination Parks stated in general terms that his estimates of value were based on his experience in dealing with coal properties and on comparable sales. He was not asked to identify any particular sale he relied on. It was not necessary, in order for his testimony to have probative value, that he identify the comparable sales. Commonwealth Department of Highways v. Tyree, Ky., 365 S.W.2d 472. On cross-examination, Parks was questioned in detail concerning what sales he relied on. He mentioned three. One was a tract of 225 acres, some 12 miles from the tract in question, containing six acres of strip coal. He was not asked what price that sale brought. The second was a tract of 100 acres of No. 6 coal, about 25 miles from the tract in question. The price was $150 per acre. He testified that although the No. 6 seam was only about half the thickness of the No. 11 and No. 12 seams, the No. 6 coal was twice as valuable because of its better quality. The third sale involved a 55-acre tract some two miles from the tract in question, on which the No. 11 coal had been mined from under the No. 12 coal. The price was $10 an acre. The first two tracts were in reasonable proximity to cleaning, processing or preparation plants. All three sales took place around four years before the trial of the instant case.

■ It is to be noted that Parks was not asked what price was brought on the first sale; that although the sale of the tract with the No. 6 coal was for only $150 an acre he placed a value of $300 an acre on the unmined portion of the tract here involved; and that although the 55-acre tract on which the No. 11 coal had been mined out brought only $10 an acre he valued the similar portion of the tract here involved at $150 an acre. Thus it is clear that he was not using these sales as a fixed standard of value but only as a guide in arriving at value. Where this is the case, dissimilarities between the lands involved become less significant because the witness makes allowance for the dissimilarities; it may be considered that he has given weight only to the comparable features. See Nichols on Eminent Domain, Vol. 5, Sec. 21.3(1), pp. 430, 431.

■ In this connection it should be kept in mind that evidence of comparable sales may be offered on either one of two theories: (1) As independent substantive evidence of the value of the property to which the comparison relates; and (2) as foundation evidence supporting the opinion of the expert witness. Stewart v. Commonwealth, Ky., 337 S.W.2d 880. Where (as here) the evidence comes in under the second theory, there is less reason for being strict in regard to similarity, because the evidence serves the purpose only of supporting the credibility of the estimate of value given by the witness. See Commonwealth Department of Highways v. Tyree, Ky., 365 S.W.2d 472.

■ The dissimilarities brought out in the cross-examination of Parks were that the allegedly comparable tracts were some miles from the tract in question, the sales took place some four years before the trial, the kind of coal in one tract was not the same, and the tracts were not comparable in size. We do not consider the distance to be a fatal dissimilarity because in the case of rural property distance is not highly significant; similarity of *use* is more important than proximity. See Nichols on Eminent Domain, Vol. 5, sec. 21.31

(3), p. 460. Here the distances were not great considering that the properties all were in the same general Western Kentucky coal field. As concerns the difference in time (four years), we believe the sales were not too remote, considering that there was no evidence of such a change in conditions during the interval as to make the sales unreliable tests of value. See Nichols on Eminent Domain, Vol. 5, sec. 21.31 (2), p. 452. The difference in the kind of coal was compensated for by the testimony that the No. 6 coal was worth twice as much as the No. 11 and No. 12 coal. With respect to the fact that the tracts involved in the sales were not comparable in size to the tract in issue, we think Parks, who admitted that a large tract has more proportionate value for strip-mining purposes than a small tract, compensated for the difference by valuing the tract in issue at a price per acre considerably higher than that obtained at the sales he used for comparison.

The appellant argues that there are a number of respects, in addition to those above mentioned, in which the "comparable" tracts *might not* have been similar to the tract in issue, such as in the amount of overburden. Our answer to this is that since the indentification of the "comparable" tracts was brought out in *cross-examination*, for the purpose of attacking the credibility of Parks' opinion of value, the burden was on the cross-examiner to develop the points of dissimilarity. Parks was not required to show the tracts were similar; the cross-examiner was required to elicit evidence showing they were not similar. (The burden would have been reversed had the comparable sales been offered as independent substantive evidence of value of the tract in issue, or had Parks on direct examination identified the comparable sales for the purpose of lending support to his estimates of value.) This in substance was one of the holdings in Commonwealth Department

of Highways v. Tyree, Ky., 365 S.W.2d 472.

In Stewart v. Commonwealth, Ky., 337 S.W.2d 880, 884, we said:

"* * * where the properties are reasonably similar, and a qualified expert states his opinion that they are sufficiently comparable for appraisal purposes, it is better to leave the dissimilarities to examination and cross-examination than to exclude the testimony altogether. * * *"

It is our conclusion that the trial court did not err in overruling the motion to strike the testimony of Parks.

As concerns the testimony of the witness, Donan, the appellant maintains that it had no probative value. Since there was no motion to strike his testimony and since we hold that the testimony of Parks was admissible, it would not seem to make any difference whether or not Donan's testimony had probative value. In any event, the only complaint concerning Donan's testimony is that he could not estimate, on the stand, the number of tons of coal in the entire 614-acre tract. We think this is of no importance, because he did estimate the value of the entire tract on an acreage basis and it was plain from his testimony that he knew the kinds of coal seams that were under the land and knew the average tons per acre of each seam in areas where both seams were present.

The appellant vehemently argues that the trial court erred in admitting testimony of the county tax commissioner as to the value at which the appellant had listed the land in question for taxation. Admittedly the assessment return was signed by an officer of the appellant company. However, it is argued that the value per acre stated in the return was a standard value uniformly applied by the Department of Revenue to all coal lands in the area and that it was based on a formula prescribed by the department.

Our rule is that evidence of assessed value is not admissible unless the value was "fixed" by the landowner. Commonwealth v. Gilbert, Ky., 253 S.W.2d 264, 39 A.L.R.2d 205. The appellant interprets this as meaning that the landowner must make his own computations and employ his own formula—that he must independently determine the value. In our opinion, however, the rule means simply that the landowner must have *turned in* a value at which he proposes to have his property assessed. As stated in the Gilbert case, his signed assessment return is considered to be an admission against interest—he had made a commitment to that value. The statute, KRS 132.440, requires that he make oath that he had listed the property at its fair cash value. Under the rationale of the rule, it makes no difference that the landowner used someone else's standard of value, or formula, or even that he may have considered that he had no real choice as to the value. Certainly the appellant had a choice to list its land at *more* than the standard value. Particularly is this so since the appellant maintains that its tract was in fact much more valuable than other coal lands in the area.

We hold that the trial court did not err in admitting the evidence of the assessment.

A final contention is that the trial court erred in striking the testimony of the appellant's witness, Badgett, a coal operator in Hopkins County. On direct examination Badgett testified that the entire tract had a "before" value of $4,264,000 and an "after" value of $4,136,900, making a difference of $127,100. He mentioned two "comparable" sales. On cross-examination he stated positively, twice, that he did *not* to any extent use these two sales in arriving at his estimate of value of the tract in issue. He stated that the *only* factor he used was "that there was a certain number of tons of strip coal in that area and that we would be able to recover them at

a profit." When asked again what factors he used, he said: "There is right at six million tons that we considered." Also, "We are interested in a coal field, and there is approximately six million tons of coal in that field." And, "We used the factors that there is six million tons of coal in that field, the West Kentucky owns the surface, owns top and bottom, and it is a very, very good deal. * * * We have been negotiating for this tract." At the close of the cross-examination the court, on motion of the Commonwealth, admonished the jury "not to consider the values placed on the property involved in this litigation by this witness."

In Commonwealth Department of Highways v. Tyree, Ky., 365 S.W.2d 472, this Court said that an estimate of value by a qualified witness has initial acceptability as evidence without his having stated the factors he considered, but if subsequently on cross-examination it is brought out that his estimate was based solely or primarily on an improper factor his estimate becomes invalid and is subject to a motion to strike. That is exactly the situation we have here. Badgett's testimony on direct examination was initially acceptable, but on cross-examination it was brought out that his estimate was based solely on potential *profits*. This was an improper factor. See City of Newport Municipal Housing Commission v. Turner Advertising, Inc., Ky., 334 S.W.2d 767.

We feel that the rule laid down in the Tyree case should be applied with caution, and the testimony of a witness should not be stricken where there is merely a conflict between his testimony on direct examination and on cross-examination, or where he obviously is confused, or where it is not plain that his estimate was based on an improper factor. It would seem that where there is doubt the opportunity should be afforded, on request, for the direct examiner to clarify the matter by redirect examination.

Here, Badgett's qualification as having knowledge of market values was none too satisfactory to begin with. Nor did he unequivocally, on direct examination, state that he based his estimates on his knowledge of market values. When first asked whether he was familiar with the fair market value of coal land in the vicinity his answer was, "We have been paying—." On being asked again his answer was simply, "Yes." When asked whether in his knowledge of market values he took into account the existence of a voluntary seller and a voluntary buyer, his answer was, "I don't know exactly how to answer that. We have been after this property for three years and—." Later he answered a simple "Yes" to a question asking whether he had "undertaken to arrive at" the fair market value of the land in issue. Upon being asked whether he was familiar with sales of coal lands in the county he answered, "My answer is yes, and we bid on that highway—." Later, after a recess, he answered "Yes" to the question, "Are you familiar with the reasonable market value of land bought and sold by a purchaser under no compulsion to buy and a seller under no compulsion to sell within the 614 acre tract," and he mentioned two other sales. Finally, in response to a question setting forth all of the elements that should be considered in estimating market value, he stated his estimate of "before" value. Then, after being questioned only as to the number of tons of coal in the condemned parcel and the isolated parcel, he stated his estimate of "after" value.

A reasonable impression from Badgett's testimony on direct examination, despite his formal answers to formal questions, is that the main factors that influenced his opinion of value were the number of tons of coal in the tract and the fact that he was anxious to acquire the tract for his company. This impression was transformed into a certainty on cross-examination, when he said the *only* thing he considered was that "there was a certain number of tons of strip coal in the area and that we would be able to recover them at a profit."

This is not a case where a witness gave clear and forthright testimony on direct examination and then was led into making conflicting statements on cross-examination, or where the witness obviously became confused. On the contrary, the cross-examination verified the impression that one would receive from the direct examination. If the appellant's counsel thought that the witness was confused or that his testimony was capable of different interpretation, counsel should have requested the opportunity for redirect examination.

It is our opinion that the trial court did not err in admonishing the jury not to consider Badgett's estimates of value.

The judgment is affirmed.