COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,

v.

Burnett W. NAPIER et al., Appellees.

Court of Appeals of Kentucky.

March 5, 1965.

John B. Breckinridge, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., George P. Stavros, Frankfort, Reed D. Anderson, Atty., Madisonville, for appellant.

H. B. Noble, Hazard, for appellees.

DAVIS, Commissioner.

In this condemnation proceeding the Department of Highways is acquiring portions of two lots owned by the appellees. The Department prosecutes this appeal, seeking to overturn the trial court's judgment for $25,000 in favor of the appellees, premised upon two assignments of error: (1) the verdict is excessive and unsupported by sufficient evidence of probative value, and (2) the trial court erred in failing to strike testimony reflecting that a noncompensable factor was used in support of claimed reduction of after value.

The two lots involved are situated in the Walkertown Addition to Hazard and are on opposite sides of Kentucky Highway 15. The present condemnation is to acquire land incident to construction of the Walkertown Interchange on an extension of Eastern Kentucky Parkway. Throughout the record the lots were referred to as Lot No. 3 and Lot No. 11; for convenience we shall use those designations.

Lot No. 3 fronts on the west side of Kentucky Highway 15 (which serves as the Main Street of Hazard). Before the taking this lot had frontage on the highway for 77.8 feet; its depth was about 460 feet, its shape generally rectangular. The rear portion of the lot's described boundary is within the waters of the North Fork of the Kentucky River. Of the 42,323 square feet embraced in the original boundary, 4,547 square feet are in the river. The taking by the Department includes slightly more than thirty-seven thousand square feet, including the portion under water. All that is left of Lot No. 3 after the taking is a wedge shaped plot, having frontage of 35.4 feet on Highway 15. The frontage is the widest portion of this remaining wedge, which narrows to zero as it traverses its remaining depth of about 240 feet. There was no building or other improvement on Lot No. 3 at the time of the taking.

Lot No. 11 had frontage of 102.3 feet on the east side of Highway 15 before the taking. It had depth of about 262 feet and was slightly narrower in the rear than in front. There was an offset in the front line of Lot No. 11, although it was substantially rectangular prior to the taking. The original boundary of Lot No. 11 contained about 21,547 square feet; the taken portion includes 7,182 square feet, so that slightly more than 14,000 square feet remain. The plot taken from Lot No. 11 is a rectangle, having frontage of 30.8 feet on Highway 15, and upon which was located a small two-room building which had once served to house a radio transmitter. The building was not in use at the time of the taking, and it appears that it had been allowed to fall into disrepair. The highway frontage remaining to Lot No. 11 is 69.5 feet; its depth is not changed, although the rear line of the lot is left at 37.3 feet after the taking.

There was evidence that a bridge will be constructed as a part of the project, and that the piers supporting the bridge, together with certain other factors, will create added drainage burdens on the remaining portion of the two lots.

For the appellant condemnor two valuation witnesses expressed their opinions as to before and after value, which we lump, although the witnesses gave breakdowns for each lot:

| Before Value | After Value | Difference |
|---|---|---|
| $14,835.00 | $6,445.00 | $8,390.00 |
| 15,750.00 | 6,900.00 | 8,850.00 |

In sharp contrast, the witnesses for the appellees gave their estimates of values:

| Before Value | After Value | Difference |
|---|---|---|
| $49,660.00 | $10,760.00 | $38,900.00 |
| 49,660.00 | 8,180.00 | 41,480.00 |
| 44,709.00 | 4,461.00 | 40,248.00 |

It is interesting to observe that in its verdict the jury made separate findings as to the before and after values, by placing the before value of the two lots at $30,000.00 and the after value of them as $5,000, thus arriving at the $25,000 verdict.

The appellant urges that the evidence for the appellees is so incredible and contrary to common knowledge as to lack probative value sufficient to support the award. Reliance is had upon Commonwealth Dept. of Highways v. Lyons, Ky., 364 S.W.2d 336, and Commonwealth Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472. While we adhere to the principles stated in those decisions, we do not find it necessary to pass upon the question of their application here. It is our view that the case must be reversed upon the second ground urged, so that we do not adjudicate the question of excessiveness—that question is specifically reserved.

Since there may be another trial, we take occasion to refer to one particular in which appellant assails the probative quality of the evidence for appellees. This attack relates to the evidence pertaining to some comparables mentioned by witnesses for appellees.

■ It appears that some nearby lots had been sold to Standard Oil Company, and the residences on some of the lots had been torn down by the oil company. It was elicited on cross-examination that two witnesses for appellees did not ascribe any value to the improvements on these lots "because they were of no use to Standard Oil." At most, we think, this was a matter going to the credibility of the particular evidence of the witnesses, and the extent of comparability of the cited sales. The jury did not accept the "before" value of the witnesses by some $19,660. It may not be doubted that instances occur wherein the existing improvements make no contribution to market value.

■ The other value witness for the appellees admitted that he had not been aware of the fact that over 4,500 square feet of Lot No. 3 are in the river. This too, as we view it, serves to assail the credibility of the witness, but does not afford basis to rule that the entire evidence is so incredible and contrary to common knowledge as to lack probative value. The before value fixed by this witness was $44,709, some $14,709 more than found by the jury as before value.

■ A more serious question is presented as respects the refusal of the trial court to strike certain testimony relating to a noncompensable item of damage. On cross-examination a witness for appellees expressly testified that he attributed a portion of the reduced after value to the fact "* * * a lot of traffic would be diverted on the new highway and wouldn't pass in front of any business that might be placed on this lot, I took the remaining value of one-half of the $258.00 I was originally using per front foot, which would be $129.00 per front foot on Lot No. 11." (The witness had said that the fact that the bridge would be there also reduced the after value.) The appellant's counsel promptly moved the court to strike the testimony because of use of the noncompensable item of diversion of traffic. The court overruled the motion. When the witness was asked

again, on cross-examination, to enumerate the factors which he considered as reducing the after value of Lot No. 11, he again related that the diversion of traffic was one of the factors. When appellant's counsel moved to strike that testimony, the trial court responded: "You asked him yourself. You brought it out willfully and deliberately. I'll overrule your objection."

■■ We think it is beyond cavil that diversion of traffic is a noncompensable item. Commonwealth Dept. of Highways v. Carlisle, Ky., 363 S.W.2d 104; Commonwealth, Dept. of Highways v. Slusher, Ky., 371 S.W.2d 851, and cases therein discussed. Moreover, as was pointed out in Commonwealth Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472; West Ky. Coal Co. v. Commonwealth Dept. of Highways, Ky., 368 S.W.2d 738; and Commonwealth, Dept. of Highways v. Cardinal Hills Nursery, Inc., Ky., 380 S.W.2d 249, it is proper for the cross-examination to delve into the factors used by a valuation witness— and this for the express purpose of testing whether that witness has based all or part of his appraisal on any improper factor. When the attorney does elicit such admission from the witness he is not to be visited with the principle that he, the attorney, has foreclosed his right to object because he asked the question. The colloquy just recited had the added prejudicial effect of placing the trial court's firm approval on the erroneous damage factor. In such a circumstance, and in light of the appearance of liberality in the verdict, we are not able to say that this was harmless error. (It may not be said that the factor of diversion of traffic was the sole or principal basis for the witness's depreciation of "after" value, such as would make his entire evidence subject to being stricken. Cf. the Tyree and West Kentucky Coal opinions above cited.)

The judgment is reversed for proceedings consistent with the opinion.