**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**James B. MAYES et al., Appellees.**

Court of Appeals of Kentucky.

March 12, 1965.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Deddo G. Lynn, Lexington, for appellant.

W. Earl Dean, Harrodsburg, for appellees.

PALMORE, Judge.

The appellees own a small motel on the east side of U. S. Highway 127 within the City of Harrodsburg. In connection with a reconstruction and widening of the highway to accommodate 4-lane traffic, the state in this proceeding has condemned a 5-foot strip of ground along the entire 72-foot frontage of the motel property, and it appeals from an award of $7,000 to the owners.

Before the improvement project the traveled portion of the highway was 33 feet wide, which allowed for two lanes of traffic with parking on each side. The new thoroughfare is 48 feet from gutter to gutter and is designed for two lines of traffic moving in each direction. Parking will not be permitted.

The motel proper is situated to the rear of a frame residence which faces the street. The old right-of-way line was eight feet and the road pavement 13 feet from the house, and although the new pavement comes only 2½ feet closer than the old, a 4-foot sidewalk has been laid between the house and the curb. The sidewalk is one foot from the new right-of-way line, or four feet from the house.

Acquisition of this 5-foot strip necessitated the destruction of a large shade tree and a number of well-developed shrubs bordering the house front. Photographs introduced in evidence demonstrate that as a result the property is less attractive, and there was testimony that the space left between the building and the sidewalk is not sufficient for comparable replacements.

One of the state's witnesses testified that the value of the property was reduced $500, to which he added $100 for a temporary easement which is not now in controversy. The other of its valuation witnesses estimated the owners' loss at $1,300 plus $100 for the temporary easement.

The property owners used two local real estate brokers, John Sullivan and Edwin Freeman, as their only witnesses. Both of them valued the whole property at $32,000 before the taking, as had one of the state's witnesses. Sullivan estimated the value afterward at $20,000 and Freeman at $21,000.

The first question arises from the state's contention that Sullivan's testimony should have been stricken because his opinion was founded partially on a non-compensable factor, to-wit, the loss of parking on the public way in front of the motel.

The witness did admit that he had taken this improper factor into consideration, and in response to a motion to strike the trial court carefully and fully admonished the jury to disregard the testimony because the freedom to park on the highway had never been a right, but only a permissive privilege existing by grace of the highway department. Sullivan was then permitted to "re-cast" his testimony so as to explain the extent to which this factor had entered into his calculations. He answered by saying that he had not really meant to place any emphasis on the parking, that his "prime consideration" was the loss in beauty and desirability of the premises, in that what little front yard had been there was now gone, and that because of that circumstance and the increased proximity of the road to

the house the property had a market value of only $20,000 after the taking.

■ The state complains, with some justification, that instead of being disqualified this witness was permitted to weasel his way out of an untenable position. That may be so, but we are satisfied that the trial court utilized the proper approach for handling this type of situation. A professional real estate man accustomed to think and deal in terms of the valuation factors ordinarily present in a voluntary transaction between private individuals may inadvertently take into consideration some circumstance that actually does influence the value of the property (e. g., the loss of parking space, or the loss of traffic) but for a special reason, as in this case, must be eliminated from his calculations. When this appears to be so it would be senseless to banish the witness from the stand. If he is able to revise his figures by eliminating the improper factor and give an opinion on the correct basis he should be permitted to do so. It must be remembered that the objection applies to the invalid testimony, not to the witness himself.

■ The witness Sullivan's facile switch in emphasis without altering the figures to which he had theretofore testified does strain the outer limits of credulity. But that is a matter of weight and credibility rather than competence of his testimony. As the verdict shows, the jury accepted it at only 58% of face value.

It is next contended that the estimates of both Sullivan and Freeman were based to some extent on improper duplication of factors, as denounced in Smick v. Commonwealth, Ky., 268 S.W.2d 424 (1954). The Smick case is a classic illustration of what so often happened before Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963), ended the separate assessment of "land taken" and "damages to the remainder." The owners contended that in addition to payment for the land taken, which included a garage building, the cost of building a new garage should have been included as an element of damage to the remainder. Had they prevailed they would have collected for the garage twice. Such a duplication can hardly occur, however, when there is no separate appraisal of the portion of the property that is taken by the condemnation, and it did not occur in this case.

Neither of the witnesses in question made any attempt to evaluate the 5-foot strip that was taken, nor did either of them place a specific value on the tree, shrubs, or any other individual item or factor. The following excerpts provide a fair example of the testimony (under cross-examination) at which the state's complaint is directed:

Q—"By taking the shrubs that were located within that area taken, would you say that you placed a value on those shrubs that were taken?"

A—"Of course, there was a value on the shrubs, value on the trees, value on the grass."

\* \* \* \* \* \*

Q—"Would you say that the property is damaged because the shrubs and the trees were taken?"

A—"Of course, you damage the property when you take the shrubs and trees."

■ In other words, shrubs and trees have value, and when they are destroyed what is left has less value. That is just an obvious fact, not a duplication of values. A duplication of damages can occur only if at least two items are added to arrive at a total. These witnesses gave (a) the market value of the whole property before the taking, (b) the market value of what was left after the taking, and (c) the difference. There is no indication that either of them added any figures together for any purpose, and if not, a "duplication" was impossible.

■ Finally, it is argued that the verdict was patently excessive. It does seem

rather stout, but it was well under the maximum limits of the evidence. We are not in a position to say the testimony given by Sullivan and Freeman was so outlandish that it must be disregarded. The local jury was best able to judge the extent to which it was worthy of belief.

Judgment affirmed.