COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Pattie J. TEATER et al., Appellees.

Court of Appeals of Kentucky.

Dec. 17, 1965.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., John E. Smith, Lexington, for appellant.

Henry C. Cox and Eagle & Cox, Lancaster, for appellees.

PALMORE, Judge.

This is a highway condemnation proceeding in which the state appeals from a judgment awarding the landowners $7,500 for a 4.69-acre strip extending through the middle of their 166-acre farm.

The arguments in support of the appeal are (1) that the trial court erred in refusing to strike the testimony of Hogan Teater, one of the owners, and of C. M. Hulette, another witness; (2) that the state was prejudiced when counsel for the owners in his closing argument called one of the jurors by name; and (3) that the award was excessive.

The farm adjoins the south city limits of Lancaster and fronts for some distance on the west side of Kentucky 39, a highway leading south toward Crab Orchard. U. S. Highway 27, which runs southwestwardly from Lancaster to Stanford, is located to the west. A 76-acre tract of land recently bought for industrial development separates the Teater place from U. S. 27. The strip of land taken in this case is 100 feet wide and 1800 to 2000 feet long and is part of the right-of-way for a two lane east-west bypass road connecting Kentucky 39 and U. S. 27. With respect to the Teater farm, it leaves 86½ acres and all the improvements on the north and 75 acres of unimproved pasture land on the south. There will be several cuts and fills and five places at which the new road will be at grade level. The jury found the property to have been worth $74,700 ($450 per acre) before the taking and $67,200 (about $417 per acre) after completion of the project.

Two valuation witnesses for the state estimated that the affected property was worth $51,800 and $52,000 before the taking and $49,000 and $49,210 afterward. In round figures, the before values given by witnesses for the owners ranged from about $74,000 to $108,000 and their after values from $68,425 to $100,000.

Although the before values given by the respective sets of witnesses were materially different, it could not be reasonably maintained that the jury's judgment of $74,700 was not supported by substantial evidence. The significant aspect of the dispute centers on the situation existing after the taking. Here the state witnesses felt that whereas before the taking the property's highest and best use was for farming purposes, the new road would make it suitable for subdivision. On the other hand, all of the witnesses for the owners were of the opinion that there is little or no prospect for subdivision development in the near future and that farming continues to be its highest and best use. Considering the verdict in the light of those inferences the jurors were reasonably permitted to draw from the conflicting evidence, it is apparent that they chose the latter viewpoint.

The principal complaint with respect to Mr. Teater's testimony is that it was based to such extent on improper valuation factors and methods that the various admonitions given by the trial court were not sufficient to assuage the prejudice resulting from the jury's having heard it. Cf. Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472 (1963). Specifically, it is contended that he estimated separately the value of the 4.69 acres taken and the resulting diminution in value of the remainder, a method no longer permissible since Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, 854 (1963), and that in assessing the diminution he used improper factors such as the necessity of hiring help to move livestock back and forth across the new road or else building facilities for keeping stock on the 75-acre portion which heretofore has been unimproved, the cost of fencing, and the inconvenience of operating back and forth across the road.

■ Mr. Teater did say that the taking would cut the value of the remainder by $50 per acre "besides the 4.69 acres that it is taking," and the trial court promptly admonished the jury as follows:

"The jury will not consider that answer he just made. I ask you, Mr. Teater, to tell the jury what you think the farm was worth after it was known the road was going through [sic], the fair market value, not as to the acreage taken, not as to the reduction, but the sum of money you think it would bring on the fair market?"

—to which the witness replied that he thought it would bring $8,000 less. He had theretofore stated his opinion that the value of the whole farm before the taking was $655 per acre.

In view of the admonition and ensuing answer we do not believe there was a separate valuation of the land taken and damages to the remainder. If a witness says a tract was worth $108,000 before the taking and $8,000 less than that afterward, he has substantially complied with the simple "before and after" principle. Moreover, since a reduction of $50 per acre would itself total $8,050 for the 161-acre remainder tract the witness could not possibly have reached his estimate of $8,000 by adding $655 per acre for the 4.69 acres taken plus $50 per acre damage to the remainder.

■ All of Mr. Teater's testimony relating to the anticipated inconvenience and difficulty of farming back and forth across the new road was competent. In fact, in some instances the trial court may have gone further than necessary in admonishing the jury. Except for the cost of new fencing, the witness made no attempt to evaluate or put price tags on these factors. Assuming that the bisected 161 acres remain more valuable as a single farm rather than two (which is fairly inferable from the evidence of Teater and his other witnesses), disad-

vantages and inconvenience that a prospective buyer would encounter in farming the unit efficiently have a direct bearing on what he would pay for it. As pointed out in Sherrod and in the recent case of Com., Dept. of Highways v. Burns, Ky., 394 S.W. 2d 923 (1965), though not recoverable as items of damage they still may be relevant to the question of residual value.

◼ The state's witness Green testified that his estimate took into consideration that 230 rods of fencing would be required. When Teater stated that it would cost $1,500 the trial court admonished the jury as follows:

> "That is not competent testimony as to what it costs to fence it and the jury will not consider it, and you will also not consider the use these particular owners are making of this property. The only question here is the value before and after the taking."

The appropriate admonition in such a case should be to the effect that the jurors are to consider the evidence only to the extent, if any, that it may affect the price a willing buyer would pay and a willing seller would take for the property. This particular admonition therefore was more favorable to the state than it should have been.

Our conclusion with respect to the Teater testimony is that the court did not err in refusing to strike it.

◼ The witness C. M. Hulette said that in his opinion the whole tract was worth $475 per acre ($78,850) before the taking and that its value thereafter was reduced by $50 per acre, based on the taking of the right-of-way, the necessity for fencing and a new $3,000 barn, and the separation of one part of the farm from the other. Counsel for the state says that he did not fully understand the witness because of traffic outside the courtroom, hence did not move at once to strike. The reference to a specific cost price for a new barn was incompetent as beyond the scope

of strict necessity, but if counsel did not hear it probably the jury also did not. In any event, we cannot overlook the failure to object. With regard to the remainder of Hulette's testimony, basically the same answers apply as we have given in connection with Teater. In substance, what Hulette said was that before the taking the Teaters had 166 acres worth $475 per acre, after the taking they had 161 acres worth $50 per acre less, and the reason for the remainder's being worth $50 per acre less was that the farm was cut in two and would need additional fencing and a new barn in order to be conveniently farmed. We think it would not have been proper to strike his testimony.

◼ During his summation, counsel for the Teaters addressed this remark to one of the jurors (who later turned out to be the foreman): "Now, Mr. McKenzie, *you* know that property around here is worth more than the state has said it is." In speaking to the jury counsel should not indulge the familiarity of addressing any of the jurors by name. Cf. Milby v. Louisville Gas & Electric Co., Ky., 375 S.W.2d 237 (1964). Without reaching the question of whether this incident was prejudicial, we observe that there is nothing in the record to suggest that an objection was raised at the time it occurred. It was certainly too late to raise it for the first time in the motion for new trial.

◼ The contention that the verdict was excessive cannot be sustained. As we indicated at the beginning, although the opposing witnesses held widely divergent views of the initial value of the property, their differences in *spread* between before and after values were attributable to disagreement as to whether the remainder tract will have enhanced value by reason of prospects for subdivision. Taking the opinions of the witnesses for the Teaters, as the jurors had the right to do, an award of $7,500 is not so excessive at first blush to shock the conscience.

The judgment is affirmed.