**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

**v.**

**Garrett S. CLAYPOOL et al., Appellees.**

Court of Appeals of Kentucky.

March 25, 1966.

Rehearing Denied Sept. 16, 1966.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Deddo G. Lynn, Lexington, for appellant.

Rufus Lisle, Harbison, Kessinger, Lisle & Bush, Lexington, for appellees.

PALMORE, Judge.

The appellees, Garrett S. Claypool and wife, owned a 52.38-acre horse farm fronting on the east side of Russell Cave Road just north of Lexington in Fayette County. On January 14, 1963, the appellant highway department condemned the corporeal title to 11.63 acres of it for the construction of I–64 and I–75, a controlled access thoroughfare, and a .68-acre permanent easement along the front of the property for the widening of Russell Cave Road. The highway department appeals from an award of $75,567 (plus $35 for a temporary easement about which there is no dispute).

The 11.63-acre taking consisted of a swath running from the northwest corner to the southeast corner of the farm, leaving a triangular tract to the south and a more or less triangular tract to the north, which for the sake of clarity we shall call the south tract and the north tract. The south tract continues to front on the Russell Cave Road and runs back to a point. The westerly point of the north tract has been cut off from Russell Cave Road, and this remainder portion is left with one means of access, the "stubbed-in" street of a residential subdivision adjoining the east or rear boundary of the farm. The streets of the subdivision are accessible from U.S. 27, or the Paris Pike, which is some distance farther east.

The serious questions in the case arise out of the trial court's disposition of certain motions to strike testimony. Specifically, the state complains that the court committed prejudicial error in striking its witness Harper's testimony as to "after" value and in declining to strike the "after" value testimony of the landowner Claypool and his witnesses Jefferson and Palumbo. We shall discuss these in reverse order.

The landowner and his valuation witnesses gave to the north and south tracts a lesser per acre value after the taking than before because of their smaller size and irregular configuration, rendering them less adaptable to economical subdivision development. Each of them assigned a still lesser value to the north tract because it no longer had access to Russell Cave Road, and it was on this ground that the state in each instance moved to strike the after-value testimony.

There is much force in the argument that loss or impairment of access to a particular highway is difficult if not impossible to separate from other factors resulting in diminished value of a remainder tract in the instance of a partial taking. Nevertheless, the value imparted to private

property by a public highway has been put there at public expense, and this court has committed itself to the principle that what the public has given the public can, within reason, take away. Cf. Commonwealth, Dept. of Highways v. Denny, Ky., 385 S.W.2d 776 (1964); Commonwealth, Dept. of Highways v. Prewitt, Ky., 390 S.W.2d 898 (1965). It is our conclusion, therefore, that the testimony should have been stricken subject to an opportunity on the part of counsel for the landowners to elicit from the witnesses revised estimates based on the hypothesis of what the value would have been if the property still had direct access to the Russell Cave Road. Cf. Commonwealth, Dept. of Highways v. Mayes, Ky., 388 S.W.2d 125, 127 (1965).

■ In this connection, it is our further observation that instead of resting at ease on his overruled motions to strike, counsel for the state should have pursued the subject with the witnesses (by way of avowal, if necessary) to the point of establishing the amount of difference attributed by them to the erroneous factor—that is, what would have been the market value of the north tract if a direct access to Russell Cave Road had been provided? This procedure would have made it easier to determine whether the errors were prejudicial. As it is, we are able nevertheless to say there actually was prejudice because the differences per acre in after values assigned by the witnesses in question to the north and south tracts, based largely if not solely on the access factor, were quite substantial.

The witness Harper, appearing for the state, said that in his opinion the property had a market value of $157,140 before the taking and $101,875 afterward, for a difference of $55,265. The ruling of which complaint is made came about as follows (on cross-examination):

Q—"Now in getting this after-value you gave one example which you said was in May, a sale in May of 1963. How did you happen to have that sale when you were making this appraisal back in '62?"

A—"Well, I was making my after-value appraisal in arriving at this sale. Now there is a difference in before-value and after-value, but I am trying to determine in my after-value what it is worth after, nor before."

Q—"After what? Immediately after the taking?"

A—"After the road is completed according to the plans."

MR. LISLE: "I move that his testimony be excluded as to after-value."

THE COURT: "I will have to sustain the objection on that. His testimony as to the after-value is excluded from the jury's consideration."

MR. LISLE: "That's all."

(There was a conference at the bench, out of the hearing of the jury.)

Redirect Examination by Mr. Lynn:

Q—"Mr. Harper, when did you make your appraisal of this property after the taking?"

A—"At the same time that I made the appraisal of before-value."

Q—"As of what date, Mr. Harper?"

A—"As of January of 1963."

Q—"Have you changed that opinion since the original appraisal?"

A—"No sir."

MR. SMITH: "The Commonwealth objects to the ruling of the court striking the after-value of the witness Charles Harper for the reason that the attorney for the Commonwealth asked permission of the court to re-examine this witness

with regard to the date upon which he made his appraisal of the after-value of the property and whether or not the sales he has examined since the taking of the right of way affected in any way his opinion arrived at when his appraisal was made."

■ From a strictly literal standpoint, the answer given by Harper just prior to the motion to strike does connote that he was attempting to evaluate the property as of a time immediately subsequent to completion of the project as distinguished from the date of the taking, and the additional questioning by counsel for the state accomplished very little in the way of clarification or correction. It is our feeling that counsel on both sides were somewhat remiss in the latter respect. The striking of vital testimony is an extreme measure. It ought never to occur if things can be put back on an even keel through an appropriate admonition and further questioning of the witness. The motion to strike device has been ridden to death in the horde of condemnation appeals this court has entertained in recent years. Almost uniformly the condemnor has been the offender, but in this case we have a new twist, in that the state finds itself on the wrong end of its favorite sword.

Though it is not the responsibility of a lawyer to practice his adversary's case, we think that when he develops an apparent flaw or fallacy in a witness's testimony on cross-examination he should explore it fully and fairly, that there may be neither mistake, misapprehension nor misunderstanding. For example, in this particular instance we cannot tell for sure what Harper meant. It would have been a simple matter for either of the lawyers (or the judge) to ask him to forget about the time of completion of the project and state specifically what in his opinion the property was worth immediately after the taking. Our guess is that he would have given the same figure, and there would have been no problem.

Or, had he proved actually to be off course, he could have corrected his estimate and the jury could have been admonished not to consider the incorrect one.

We have made the foregoing comments because this case happens to present a convenient opportunity to dispel a persistent misconception as to the proper use of motions to strike testimony, particularly in condemnation cases. It is unnecessary to decide the question of error, because it should not recur in another trial of the case. However, one further phase of the problem requires comment. It arises from the state's contention that Harper's testimony was proper anyway, in that the correct measure of damages was the difference in market value before the taking and after completion of the project.

■ In at least two highway condemnation cases, Commonwealth, Dept. of Highways v. Baldwin, 312 Ky. 782, 229 S.W.2d 744, 746 (1950), and Commonwealth, Dept. of Highways v. Wood, Ky., 380 S.W.2d 73, 74 (1964), this court has remarked that the measure of damages is the difference between the fair market value of the property before it was generally known that the highway would be constructed and its fair market value just after its *completion*. It would appear from the supporting authorities cited in those two opinions that the measure of damages as thus stated grew out of cases in which property was damaged by the creation of a condition, or the building of a structure, and not purely and simply by a partial taking. For example, in Watson v. Chesapeake & O. Ry. Co., 238 Ky. 31, 36 S.W.2d 641 (1931), the damage resulted from a change in grade and number of railroad tracks situated in a public alley. Likewise in Hutcherson v. Louisville & N. R. Co., 247 Ky. 317, 57 S.W.2d 12 (1933), it resulted from the relocation and reconstruction of railroad tracks on Broadway in Frankfort. And in City of Ashland v. Queen, 254 Ky. 329, 71 S.W.2d 650 (1934), it was caused by the construction of a via-

duct on the public right-of-way. In that type of case it is appropriate to measure the damages after the work has been done; indeed, since there is no taking there can be no damage until that time. However, it is not appropriate in condemnation cases, and to the extent that Commonwealth, Dept. of Highways v. Baldwin, 312 Ky. 782, 229 S.W.2d 744, 746 (1950), and Commonwealth, Dept. of Highways v. Wood, Ky., 380 S.W.2d 73, 74 (1964), indicate otherwise they are overruled.

■ The correct measure of damages for a partial taking in a land condemnation case is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the remaining property immediately after the taking. Cf. Commonwealth, Dept. of Highways v. Priest, Ky., 387 S.W.2d 302, 306 (1965). In determining the value after the taking the witnesses and the jury may, of course, take into consideration, in the same manner as would a willing buyer and a willing seller, the probable completion of the improvement project as planned. That is the only respect in which the condition or situation in which the property will be after completion of the project is relevant to its value immediately after the taking.

■ The state makes a further argument that the witness Palumbo's testimony was devoid of probative weight and should have been stricken because instead of fixing definite figures he estimated the after-value of the south tract within a range of $1500 to $2000 per acre and the north tract within a range of $500 to $1500. We do not agree.

■ The evidence as a whole was amply sufficient to sustain the amount of the award against the contention that it was excessive.

The judgment is reversed with directions for a new trial.