**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Harold L. DENNIS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 11, 1966.

Robert Matthews, Atty. Gen., H. C. Smith, L. A. Faurest, Frankfort, Faurest & Collier, Tildon H. McMasters, Elizabethtown, for appellant.

J. Smith Barlow, Jr., Bardstown, for appellees.

PALMORE, Chief Justice.

The state highway department appeals from a judgment awarding appellees, Harold and William Dennis, $40,350 in a land condemnation case. It makes two contentions, (1) that the trial court erred in permitting Harold Dennis to testify that after the taking it would no longer be feasible for the remaining property to be used as a dairy or stock farm, and (2) that the award was excessive.

The affected property consisted of a 161-acre farm about 2½ miles south of Bloomfield on State Highway 55, a blacktop road running from Bloomfield southward to Springfield. It was in a very high state of cultivation and was used as a dairy farm and for other general agricultural purposes,

including the raising of tobacco. The Dennises purchased it in 1958 for $52,500 and thereafter improved it extensively, in addition to which the value of farm lands in the vicinity has substantially appreciated.

Before the taking the property lay within one boundary, 20 acres on the east side and 141 acres on the west side of Highway 55. Two barns and a spring-fed pond were located on the east 20 acres, and a 14-room century-old brick dwelling with a stone wall in front, together with outbuildings, was situated on the west 141 acres.

The area taken by the state is now a part of Central Kentucky Parkway, including most of a cloverleaf interchange with Highway 55 plus a widening of Highway 55 along its southerly approach to the parkway (the northernmost tip of the cloverleaf area and the north approach of Highway 55 lie beyond what formerly was the Dennis north boundary). Its shape is something like that of a tomahawk, with the handle running through from the west line of the farm and the business end occupying the northeast corner. It includes a total of 42.3 acres, 12.3 acres of which come out of the east 20 acres and 30 acres out of the main or west part of the farm. A 37.28-acre portion of the property lying northwest of the parkway is left landlocked, there being no access between it and the parkway or any other existing road or passway.

The residence stood 170 feet back from Highway 55, and its yard lay almost flush with the top of a stone wall paralleling the highway. The cut of Highway 55 has been increased from 5 feet to 10 feet, the right-of-way has been moved 72 feet nearer to the house, and the stone wall has been taken and removed. A large barn, a well, and the pond (including its source-spring) located on the east 20 acres, together with other fencing along both sides of Highway 55, also have been taken.

Aside from a temporary easement which is not in issue, the verdict of the jury was as follows:

| Before value | After value | Difference |
|---|---|---|
| $80,500 | $40,250 | $40,250 |
| [$500 per acre] | | |

The witnesses gave these estimates:

| | Before | After | Difference |
|---|---|---|---|
| For the condemnor: | | | |
| Story | $71,400 | $42,300 | $29,100 |
| Taylor | 69,400 | 45,275 | 24,125 |
| For the landowners: | | | |
| Dennis | $80,500 | $30,710 | $49,790 |
| Arnold | 80,600 | "about 30,000" | 49,000 (approximately) |
| Hardin | 80,500 | 37,250 | 43,250 |
| Seay | 75,670 | 32,997 | 42,673 |
| Dugan | 76,475 | 34,412 | 42,063 |
| Akers | 91,150 | 46,900 | 44,250 |

◼ The first question is whether Harold Dennis, after testifying that the property had been operated as a dairy and for general farming, should have been allowed to say whether it could still be used as a dairy. His answer was that it could not be used as "a self-sustaining dairy or stock farm" because there would not be enough land to

grow feed and provide pasture as well. Counsel then asked and was answered as follows:

Q- "Is this factor one of the elements that affects the after market value that you testified about?"

A- "Yes, sir. Yes, sir."

■ By reason of his experience and knowledge of land values in Nelson County Mr. Dennis was a fully qualified valuation witness. Cf. Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720 (1963). As such, he was competent to enumerate and explain factors bearing upon the value of the farm and to compare the before and after values in terms of those factors. And even if he had not been so qualified, surely any evidence of diminished usability or versatility would be relevant and competent *as a value affecting factor.* Cf. Commonwealth, Dept. of Highways v. Burns, Ky., 394 S.W.2d 923 (1965); Commonwealth, Dept. of Highways v. Teater, Ky., 397 S.W.2d 137 (1965); Commonwealth, Dept. of Highways v. Arnett, Ky., 401 S.W.2d 762 (1965); Commonwealth, Dept. of Highways v. Sea, Ky., 402 S.W.2d 842 (1966).

■ There are, of course, cases in which inconvenience and restrictions in the way property can be used are not relevant. For example, if it is undisputed that the highest and best use of the land after the taking will be for a different purpose, then it makes no difference how hard it will be to continue operating it for the same purpose as before. Likewise, if it is clear that a tract cut in two will be equally or more valuable if sold in two pieces instead of as a unit, it is of no consequence that driving cattle back and forth across the new road will be inconvenient. Cf. Commonwealth, Dept. of Highways v. Roberts, Ky., 390 S.W.2d 155 (1965). But we do not have a comparable situation here. There was testimony by the state's witnesses that in other instances property adjacent to interchanges between limited-access expressways and lesser highways has been enhanced in value by reason of commercial potential, but no one could say with any degree of assurance that it will be so in this case (especially in view of the fact that the parkway was designed to accommodate a service area within its right-of-way a very short distance from the intersection of Highway 55). The jury could reasonably infer that the highest and best use of all this property after the taking would be agricultural. That being so, the evidence that its utility for that purpose would henceforth be limited was competent as a value-affecting circumstance.

■ All of the witnesses, including the state's, agreed that there had been no recent sale of any property in the area as valuable as the Dennis place. For example, the highest per acre price reflected by the comparable transactions cited by the witness Story was $273, whereas he appraised the Dennis farm at $443. Four of the witnesses for the owners, all of them well qualified, estimated it at $500 or more. The highest "comparable" sale prices being admittedly so far off the value of the property in question, it occurs to us that all of the estimates were largely in the area of guesswork anyway, and the comparable sale figures do not provide a reasonable basis for judicial interposition of a limit between $443 and $500. Hence we cannot hold that the before value of $80,500 established by the verdict was excessive.

■ The jury found that the value of the farm had been reduced by exactly 50%. On the face of it this might appear unwarranted, because even if the landlocked 37.38 acres be considered absolutely worthless (as some of the witnesses said), the Dennises still have 70 acres, the equivalent of half the original farm, on which the residence and its outbuildings are situated. However, their witnesses testified, as the state's witness Story had already conceded, that the acreage taken by the state was "part of the best land on the farm." If the portion thus taken was of better quality than the average quality of the remainder,

and the remainder was further reduced in value by its being rendered adaptable to fewer agricultural purposes, it does not appear unreasonable for the jury to have concluded, as evidently it did conclude, that the value of the house and the speculative value of the landlocked acreage were offset by these differences.

This was an exceptionally well tried case on both sides, and the record is free of error.

The judgment is affirmed.