W. S. SNYDER et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

Jan. 19, 1968.

Marion Rider, Frankfort, for appellants.

Robert Matthews, Atty. Gen., H. C.
Smith, Asst. Atty. Gen., Perry R. White,
Jr., Frankfort, for appellee.

STEINFELD, Judge.

This is an appeal by the landowners
from a judgment awarding them $25,600.00
for the taking of land from two farms
in Franklin County for the construction
of Interstate Highway 64, a limited access
highway. They demand a new trial. We
reverse.

Parcel 14 which is called the Bridgeport
Farm was a highly improved dairy farm,
with a ten acre tobacco base. It was gen-

erally rectangular in shape, contained 254 acres and was located on Highway 60 about one mile west of the Broadview Manor Subdivision and about one-half mile west of the State Fish and Game Farm. It fronted about 3,000 feet along U. S. 60 and extended southwardly from the highway a distance of about one-half mile. It contained many improvements such as a residence, tenant house, barns, silos and utility buildings. It was serviced by utilities and city water.

A portion of this tract, containing about 60 acres, extending from west to east across the south or rear boundary was taken on October 30, 1958, and a parcel containing approximately four acres lying south of the new right of way was cut off and left landlocked. No improvements were located on the areas landlocked or taken. The owners had operated a dairy farm on the 254 acres. According to the landowners' evidence, 40 of the 60 acres taken were devoted exclusively to the raising of silage because this area could be plowed yearly without erosion.

The commissioners appointed in the county court proceeding which was filed on November 1, 1958, reported that the 60 acres taken from Parcel 14 had a value of $300.00 per acre or a total of $18,000.00, that the damage to the four acres which became landlocked by the taking was $800.00 and that the damage to the remainder was $12,700.00. The total they awarded for this parcel was $31,500.00. From a judgment entered on December 1, 1958, in the county court pursuant to the commissioner's report the Commonwealth timely appealed. KRS 177.087. The owners promptly filed an "Answer, Counter-Claim and Cross Appeal". For reasons unknown to us the case was not tried until January and February 1966.

Before discussing the second tract called Parcel 23, which was located several miles from Parcel 14, we will deal with a claim of error which affects only Parcel 14.

The jury found that Parcel 14 was worth $80,000.00 before any was taken and $56,000.00 thereafter, a difference of $24,000.00.

■ The Snyders contend that the lower court did not permit them to present any evidence as to the effect the taking of the 60 acres and severing the four acres had on the operation of the dairy farm. Dr. Snyder was asked to tell how the taking of the 64 acres affected his use of the farm. He answered, "it made it such that we were unable to find a plot of land on it that we could raise our silage corn." The Commonwealth objected but the court ruled that he could testify to facts that would show "where he was damaged by the taking in this particular * * *". He was then asked to tell "what was the situation when you had only 190 acres left with your operation from an operational standpoint along as of the time * * *". He complains because the court interrupted him and explained that they were trying the question of the difference in the fair and reasonable market value and not the operation of the dairy farm. Our holdings have been that "any evidence of diminished usability or versatility would be relevant and competent as a value affecting factor." Com., Dept. of Highways v. Dennis, Ky., 408 S.W.2d 444, 447 (1966). The trial court correctly excluded the testimony with respect to *Snyder's operation* of the farm. Com., Dept. of Highways v. Cottrell, Ky., 400 S.W.2d 228 (1966).

Parcel 23 (including Parcel 23A) contained 160 acres. It was bisected by the Old Harrodsburg Road and was located about one mile south of U.S. 60. Sixty acres were on the east side and 100 acres on the west side of the Old Harrodsburg Road. The 100 acre tract was not disturbed. Two and nine-tenths acres were taken from the southeast portion of the 60 acre tract and approximately 15 acres were severed. This severed part was the most southeastern part of the 60 acre tract. No improvements were taken except a pond.

The commissioners appointed in the county court proceedings reported that the 2.96 acres had a value of $250.00 per acre or a total of $640.00 and that the pond which was taken was valued at $800.00, that the severance damage amounted to $6,875.00 and that the loss of a fence caused damage of $330.00 making a total of $8,645.00. The same judgment which was entered in the county court with respect to Parcel 14 included this award. The appeal to the circuit court was from the entire judgment.

The jury declared that immediately before the taking on October 30, 1958, the value of Parcel 23 was $48,000.00 and that immediately thereafter the value was $46,-400.00 and that the difference was $1,600.00.

The owners contend that the lower court erred in permitting Mr. Robert Dean and Mr. Victor Williams, who testified for the Commonwealth, to place a value as of the date of trial on the 15 acre tract that was severed whereas the valuation date was the day on which it was taken. They point out that the property was taken as of October 30, 1958, and that the trial was not held until the end of January 1966. They argue that at the time of taking a controversy existed as to whether or not any provision had been made for an access road and that the plans were not completed until after the taking. The Commonwealth refers us to the petition and the exhibits filed with it in the county court, which it claims show this access road. The petition states that "Parcel 23A" was being acquired "for the purpose of constructing a Frontage Road". The engineer for the Commonwealth referred to such a road when he answered that the frontage road serves the severed portion of Parcel 23 and that it was included in the original plans. Obviously, an access road from Highway 27 to the severed 15 acres was planned at the time of taking.

■ We have examined the testimony of the two witnesses and find no merit in appellants' claim that the testimony referred to values at the time of the trial. Mr. Dean was asked the value of Parcel 23 "immediately prior to November 30, 1958 * * *" and "the value of that property which remained immediately after November 30, 1958". After asking Mr. Williams the value of "Parcel 23 immediately prior to November 30, 1958" and "immediately subsequent to November 30, 1958" he was told by counsel for the Commonwealth that "All of my questions * * * are based upon immediately prior to the taking and immediately after the taking."

We now come to issues which involve both parcels. The Snyders contend "that the lower court went too far striking testimony of" their witness Dan Conley. Mr. Conley, who was exceptionally well qualified to state values (Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472 (1963); Com., Dept. of Highways v. Fister, Ky., 373 S.W.2d 720 (1963)) testified that the fair market value of Parcel 14 before the taking was $102,400.00 and the value of Parcel 23 at that time was $48,000.00. No objection was made to those answers. He also testified that the value of Parcel 14 after the taking was $53,800.00 and of Parcel 23 was $36,000.00. He was asked to explain how he arrived at the after taking values of the two parcels. In fixing the after taking value of Parcel 14 he said that he had considered the value of the 60 acres taken and the four acres which were severed. He estimated the damage or depreciation of the improvements by reason of the reduction in the size of the farm and concluded that a willing buyer would pay a willing seller $53,800.00 for that which remained. As he described each item of damage he ascribed to it the *dollar figure* which totaled to the reduction.

Counsel for the Commonwealth moved to strike Conley's testimony as to the after taking values and to "admonish the jury not to consider his testimony". He relied on Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963). The court reserved its ruling. Conley was then asked

to explain the basis on which he had fixed the after taking value of the remainder of Parcel 23. He said that the value of the 15 acres which were severed had been reduced one-half, the reduction in the total size of the farm had caused a reduction in the overall value and the loss of a pond caused additional damage. He placed *dollar figures* on each item, lumped them together for a total reduction of $12,000.00. The motions to strike and admonish were repeated at the close of Conley's direct testimony. Again ruling was reserved.

He was cross-examined mainly with respect to Parcel 14. He said "When you appraise for anything, you've got to look at everything." "I was supposed to estimate what the highway coming meant to the farm." In explaining how he arrived at the reduction in value of that parcel to the extent of $48,600.00 he said the 60 acres taken and the four acres severed were worth $23,000.00 and the other reduction was arrived at as follows:

"A. I made 4 steps. One, I estimated the value of the 64. Then I proceeded on the other things that happened to the farm because of the 64. When I got through I said you've damaged this $48,600.00, and I've got a good reason for it, and I subtracted that from $102,-400.00 and got $53,800.00."

\* \* \* \* \* \*

"Q. And that represents your judgment of the market value of it?

A. That's right.

Q. And you have merely explained the basis on which you arrived at your evaluation of what it would bring at a public sale?

A. Yes, sir."

The court then ruled:

"(IN CHAMBERS)

*THE COURT:* On motion of the Commonwealth to strike the testimony of the witness Dan Conley, for whatever reasons were described in that motion, it is sustained to the extent that all but his testimony as to the before value of the farms from which the land was taken may be admitted, and the jury will be admonished that they may consider only that part of Mr. Conley's testimony which fixes the value of the entire tract immediately before the taking at $102,-400.00 and they will not consider any of the balance of his testimony."

The jury was admonished:

"Ladies and gentlemen, the testimony of the last witness you have heard, Mr. Dan Conley, has been stricken on motion of the Commonwealth for all purposes and to all matters except his testimony as to the value of the entire tract of land before the taking. For all other purposes and as to all other matters contained in his testimony, you will disregard and give no consideration to any of the matters about which he testified."

The Snyders objected and they argue here that this ruling was prejudicial error and contrary to the law announced in Com., Dept. of Highways v. Mayes, Ky., 388 S.W. 2d 125 (1965); Com., Dept. of Highways v. Garland, Ky., 394 S.W.2d 450 (1965); Com., Dept. of Highways v. Claypool, Ky., 405 S.W.2d 674 (1966). They also say that the testimony of this witness related to subjects other than values. The Commonwealth relies on Com., Dept. of Highways v. Mann, Ky., 387 S.W.2d 848 (1965).

Conley's testimony included statements as to location, quality, improvements and suitable uses of these properties. No objection was made to the testimony relating to those subjects. An admonition should have been given for the reasons we will announce, but the one given was too broad.

■ Mr. Conley had been an appraiser for the Federal Land Bank for nine years and had appraised farm land continuously in all the counties in the area. In many cases he had appraised as many as five farms per day. He belonged to an organ-

ization which regularly studied farm values and he participated in the studies. After thoroughly describing the examination he had made of the two farms, the improvements thereon, and the uses of the properties, he stated his opinion as to the before taking values. He then stated what was taken away and what was severed. This testimony was proper and should not have been stricken. Com., Dept. of Highways v. Swift, Ky., 404 S.W.2d 467 (1966).

■■ The statements to which the objections were valid were the *dollar figures* which he placed on the individual factors. Such testimony is incompetent on direct examination. Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472 (1965); Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963); Com., Dept. of Highways v. Cardinal Hill Nursery, Inc., Ky., 380 S.W.2d 249 (1964); Com., Dept. of Highways v. Hopson, Ky., 396 S.W.2d 805 (1965); Com., Dept. of Highways v. Cottrell, Ky., 400 S.W.2d 228 (1966). It is proper, however, on cross-examination to delve into factors used by the witness to ascertain whether he has reached the values in a manner which we have approved. Com., Dept. of Highways v. Napier, Ky., 387 S.W.2d 861 (1965).

■ Since there will be another trial we consider it proper to answer the claim of appellants that Robert Dean was not qualified to testify as a valuation witness. He had taken a course in appraising and had accompanied another appraiser for several months before he appraised the property involved in this case. His short training and experience affects the weight of his testimony but was sufficient to qualify him to express his opinion as to values. Com., Dept. of Highways v. Musick, Ky., 400 S.W.2d 513 (1966); Com., Dept. of Highways v. Hudnall, Ky., 405 S.W.2d 293 (1966); Com., Dept. of Highways v. Brown, Ky., 415 S.W.2d 370 (1967).

The other points are not likely to arise again, therefore we consider it unnecessary to discuss them.

The judgment is reversed with directions to hold another trial.

All concur.